[909 NE2d 1213, 882 NYS2d 375]

IGOR MISICKI, Appellant, v SALVATORE CARADONNA, Defendant, and 430-50 SHORE ROAD CORPORATION, Respondent. (And a Third-Party Action.)

Argued April 2, 2009; decided May 12, 2009

512

**POINTS OF COUNSEL**

*Perecman Firm, P.L.L.C.,* New York City (*David H. Perecman* and *Rudolf B. Radna* of counsel), for appellant. I. The inspect, repair or replace provision of 12 NYCRR 23-9.2 (a) is a

specific positive command within the meaning of *Ross v Curtis-Palmer Hydro-Elec. Co.* (81 NY2d 494 [1993]). II. The sound public policy behind the passage of Labor Law § 241 (6) and the need for regulation of the condition of inherently dangerous power tools used on construction sites and logical analysis of the language of 12 NYCRR 23-9.2 (a) all militate toward a finding that it is specific. (*Vallina v Wright & Kremers,* 7 AD2d 101; *Bland v Manocherian,* 66 NY2d 452.) III. The general language contained in the regulation does not void the specific inspect, repair and replace provision of 12 NYCRR 23-9.2 (a). (*Morris v Pavarini Constr.,* 9 NY3d 47; *Ross v Curtis-Palmer Hydro-Elec. Co.,* 81 NY2d 494; *Brasch v Yonkers Constr. Co.,* 306 AD2d 508; *Zacher v Niagara Frontier Servs.,* 210 AD2d 897.) IV. The inspect, repair and replace requirement of 12 NYCRR 23-9.2 (a) is as specific and concrete as similar regulations that have been held to be specific. (*Piazza v Frank L. Ciminelli Constr. Co., Inc.,* 2 AD3d 1345; *Ross v Curtis-Palmer Hydro-Elec. Co.,* 81 NY2d 494.)

*Lewis, Scaria & Cote, LLC,* White Plains (*Deborah A. Summers* of counsel), for respondent. 12 NYCRR 23-9.2 (a) merely incorporates the ordinary tort duty of care and is too general to support a claim under Labor Law § 241 (6). (*Ross v Curtis-Palmer Hydro-Elec. Co.,* 81 NY2d 494; *Hassett v Celtic Holdings,* 7 AD3d 364; *Maldonado v Townsend Ave. Enters., Ltd. Partnership,* 294 AD2d 207; *Cun-En Lin v Holy Family Monuments,* 18 AD3d 800; *Schwab v A.J. Martini, Inc.,* 288 AD2d 654; *Creamer v Amsterdam High School,* 241 AD2d 589; *Mahoney v Madeira Assoc.,* 32 AD3d 1303; *Boyd v Mammoet W., Inc.,* 32 AD3d 1257; *Williams v White Haven Mem. Park,* 227 AD2d 923; *Sanatass v Consolidated Inv. Co., Inc.,* 38 AD3d 332.)

*Joshua Annenberg,* New York City, for New York State Trial Lawyers' Association, amicus curiae. I. Industrial Code (12 NYCRR) § 23-9.2 (a) constitutes a specific, positive command which supports a cause of action under Labor Law § 241 (6). (*Rizzuto v L.A. Wenger Contr. Co.,* 91 NY2d 343; *Comes v New York State Elec. & Gas Corp.,* 82 NY2d 876; *Ross v Curtis-Palmer Hydro-Elec. Co.,* 81 NY2d 494; *Piccolo v St. John's Home for Aging,* 11 AD3d 884; *Tillman v Triou's Custom Homes,* 253 AD2d 254; *Webber v City of Dunkirk,* 226 AD2d 1050; *Zacher v Niagara Frontier Servs.,* 210 AD2d 897; *Leader v Maroney, Ponzini & Spencer,* 97 NY2d 95; *Cohen v Lord, Day & Lord,* 75 NY2d 95; *Morris v Pavarini Constr.,* 9 NY3d 47.) II. Industrial Code (12 NYCRR) § 23-9.2 (a) must be construed as a specific,

positive command since the legislative history of Labor Law § 241 (6) and public policy favor a broad reading to protect construction workers. (*Zimmer v Chemung County Performing Arts,* 65 NY2d 513.)

## OPINION OF THE COURT

READ, J.

On October 26, 2001, plaintiff Igor Misicki, a laborer employed by Upgrade Contracting Company, was injured while working on a construction project at a two-building cooperative residential apartment complex located at 450 Shore Road in Long Beach, New York. The buildings were owned by defendant 430-50 Shore Road Corporation, which had retained an architect and hired Upgrade to carry out the work, which involved renovating the buildings' pool deck.

In July and August, plaintiff and another Upgrade employee changed out the sleeves of the air-conditioning units in the buildings' apartments. After Labor Day, plaintiff began working on the pool deck job, which first required him and his fellow workers to remove bricks from the base of the buildings' exterior walls next to the deck so as to lay bare the underlying concrete. On the day of his accident, plaintiff was "cutting" exposed concrete with a handheld nine-inch electrically-driven angle grinder. Specifically, his foreman directed him to "cut" (more accurately, abrade) a slot $2^{1}/_{2}$ inches deep into a line marked on the wall, about a foot or two above the deck.

When plaintiff retrieved the grinder from the toolbox maintained by Upgrade at the job site, he could not find the side handle for it. He described this handle as removable, and designed to be fitted onto the grinder in any one of two or three different positions. According to plaintiff, he complained to his foreman—three times—that the handle was unavailable; and his foreman repeatedly instructed him "to go back to work and . . . work[ ] without [the] handle." Plaintiff testified that he "didn't feel safe" using the grinder without the handle because he did not have "control over the machine."

After "cutting the line" for two hours with the grinder sans the side handle, plaintiff reached a point where a balcony projected from the building's exterior. The balcony was roughly three or four feet above the pool deck. In order to continue with his task, plaintiff stretched out on the deck underneath the balcony, resting on his right side; his headroom was limited, and he was lying about two feet away from the wall. Plaintiff

testified that after working in this position for 20 or 30 minutes—with at least one interruption to get up and search again for a handle—the grinder "kicked back" and the grinding wheel struck his face, deeply lacerating his upper lip, cheek and right nostril and causing him to lose consciousness momentarily.

Plaintiff was immediately taken by ambulance to a nearby hospital, where his wounds were sutured. During the ensuing year, he underwent two surgeries to relieve breathing problems that he attributes to what his doctor described as a "complicated laceration of the nose." He complains of continuing adverse health consequences, including headaches and difficulty breathing and sleeping. At the time of his deposition in April 2004, plaintiff had not worked since the accident.

In July 2002, plaintiff sued Shore and the architect for damages; he asserted common-law negligence and violations of Labor Law §§ 200, 240 (1) and § 241 (6). After the close of discovery in the summer of 2004, plaintiff withdrew his section 200 and 240 (1) claims, and discontinued the action against the architect. On March 3, 2003, Shore brought a third-party action against Upgrade, which subsequently agreed to defend and indemnify Shore. As a result, Shore's third-party action was discontinued with prejudice on March 16, 2005.

In September 2005, Shore moved for summary judgment dismissing plaintiff's complaint, which by that point consisted solely of his claim under Labor Law § 241 (6). This provision "requires owners and contractors to provide reasonable and adequate protection and safety for workers and to comply with the specific safety rules and regulations promulgated by the Commissioner of the Department of Labor" (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501-502 [1993] [internal quotation marks omitted]). The duty to comply with the Commissioner's safety rules, which are set out in the Industrial Code (12 NYCRR), is nondelegable. In order to support a claim under section 241 (6), however, the particular provision relied upon by a plaintiff must mandate compliance with concrete specifications and not simply declare general safety standards or reiterate common-law principles (81 NY2d at 504-505). Contributory and comparative negligence are valid defenses to a section 241 (6) claim; moreover, breach of a duty imposed by a rule in the Code is merely some evidence for the factfinder to consider on the question of a defendant's negligence (*see Long v Forest-Fehlhaber*, 55 NY2d 154, 159-160 [1982]).

Plaintiff alleged that Shore violated two of the Commissioner's rules—12 NYCRR 23-1.12 (c) ("Power-driven saws") and 23-9.2 (a). In support of its motion for summary judgment, Shore argued that section 23-1.12 (c) was inapplicable because it covered portable, handheld circular saws, which Shore's expert opined are not the same as portable, handheld grinders; and that section 23-9.2 (a) was not sufficiently specific and concrete.

Subpart 23-9 of the Code is entitled "POWER-OPERATED EQUIPMENT." Section 23-9.1 ("Application of This Subpart") specifies that "[t]he provisions of [subpart 23-9] shall apply to power-operated heavy equipment or machinery used in construction, demolition and excavation operations" with certain exclusions. This statement of applicability is followed by section 23-9.2 ("General Requirements"), and nine sections covering specific kinds of power-operated heavy equipment or machinery.[1] Section 23-9.2 (a) states in its entirety as follows:

> "(a) *Maintenance.* All power-operated equipment shall be maintained in good repair and in proper operating condition at all times. Sufficient inspections of adequate frequency shall be made of such equipment to insure such maintenance. Upon discovery, any structural defect or unsafe condition in such equipment shall be corrected by necessary repairs or replacement. The servicing and repair of such equipment shall be performed by or under the supervision of designated persons. Any servicing or repairing of such equipment shall be performed only while such equipment is at rest."

In its motion papers, Shore took the position that the Second Department—where this lawsuit was brought—had already "held that 23-9.2 (a) [was] a *general* requirement within the meaning of Ross . . . [and did] not give rise to the nondelegable duty under § 241 (6)." Shore adduced *Phillips v City of New York* (228 AD2d 570, 572 [2d Dept 1996] [referring to section 23-9.2 (a), court noted, in dicta, that "the specific provisions relied upon (by the plaintiff) merely established general safety standards . . . which do not give rise to a nondelegable duty"]),

---

**1.** These are sections 23-9.3 ("Conveyors and Cableways"), 23-9.4 ("Power shovels and Backhoes Used for Material Handling"), 23-9.5 ("Excavating Machines"), 23-9.6 ("Aerial Baskets"), 23-9.7 ("Motor Trucks"), 23-9.8 ("Lift and Fork Trucks"), 23-9.9 ("Power Buggies"), 23-9.10 ("Pile Drivers") and 23-9.11 ("Mixing Machines").

*Thompson v Ludovico* (246 AD2d 642, 643 [2d Dept 1998] [court stated, in dicta, that certain sections cited by the plaintiff, including 12 NYCRR 23-9.2 (a), "did not support his claim under Labor Law § 241 (6) because (they) were . . . merely general safety standards"]) and *Anarumo v Slattery Assoc.* (298 AD2d 339, 340 [2d Dept 2002] [court denied summary judgment to the plaintiffs on their section 241 (6) cause of action because "12 NYCRR 23-9.2 (a) merely establishes general safety standards which do not give rise to a nondelegable duty"]).

In April 2006, Supreme Court granted Shore's motion and dismissed plaintiff's Labor Law § 241 (6) claim. The trial judge concluded that plaintiff had failed to rebut Shore's prima facie showing that section 23-1.12 (c) was inapplicable to a handheld electrically-driven grinder. As for section 23-9.2 (a), Supreme Court noted that Shore relied on *Anarumo*, *Phillips*, and *Thompson*—all Second Department cases—while plaintiff cited the Fourth Department's decision in *Zacher v Niagara Frontier Servs.* (210 AD2d 897 [4th Dept 1994]). In *Zacher*, the Fourth Department decided that

> "[t]he requirement that a plaintiff must allege violation of a specific safety regulation promulgated by the Commissioner . . . was satisfied by the assertion . . . that defendants violated 12 NYCRR 23-9.2 (a). That regulation, promulgated under Labor Law § 241 (6), imposes upon owners, contractors and their agents an affirmative duty of maintenance and inspection of power-operated equipment" (*id.* at 897-898 [internal quotation marks and citations omitted]; *see also Piccolo v St. John's Home for Aging*, 11 AD3d 884, 886 [4th Dept 2004] ["We have previously determined that 12 NYCRR 23-9.2 (a) is sufficiently specific to support a claim pursuant to section 241 (6)"]).

The trial judge determined that because this case was being litigated "within the confines of the Second Department," he was compelled to "follow [the Second Department's] holding that 12 NYCRR 23-9.2 is not specific enough to support a Labor Law § 241 (6) violation."

Plaintiff moved to reargue, protesting that the Second Department cases were distinguishable because they interpreted only the first sentence of section 23-9.2 (a), and "no specific structural defect or unsafe condition *in the power equipment* was alleged" in those cases. By contrast, he contended, in *Zacher*

"the plaintiff was injured as a result of a broken handle on power equipment (a sander) . . . just like the Plaintiff herein was injured due to . . . defects in the equipment," including a missing handle.

Supreme Court was persuaded. In March 2007, the trial judge granted reargument, vacated his April 2006 decision and order, and denied Shore's motion for summary judgment. Supreme Court decided that the provision in section 23-9.2 (a) "requir-[ing] the repair or replacement of unsafe equipment [was] a specific positive command . . . applicable to the facts of the instant case." In June 2007, the judge clarified that his April 2006 order remained in effect except insofar as modified by his March 2007 decision regarding section 23-9.2 (a). Supreme Court further noted that there was "a question of fact whether section 23-9.2 (a) was violated."

In May 2008, the Appellate Division reversed. "Contrary to the Supreme Court's determination," the court opined, "12 NYCRR 23-9.2 (a) does not support the plaintiff's claim under Labor Law § 241 (6), as that provision merely establishes general safety standards which do not give rise to a nondelegable duty" (51 AD3d 644, 645 [2d Dept 2008]). The Appellate Division cited its previous decisions in *Anarumo*, *Thompson* and *Phillips* as well as the First Department's decision in *Hassett v Celtic Holdings* (7 AD3d 364, 365 [1st Dept 2004] ["12 NYCRR 23-9.2 (a) . . . is a general requirement to maintain power equipment in good operating order"]).

Plaintiff sought to appeal to us. Because the First, Second and Third Departments (*see e.g. Fairchild v Servidone Constr. Corp.*, 288 AD2d 665, 667-668 [3d Dept 2001]) have ruled that section 23-9.2 (a) does not support a claim under Labor Law § 241 (6) and the Fourth Department has ruled otherwise, we granted plaintiff permission to appeal to resolve the apparent conflict (11 NY3d 706 [2008]). We now reverse for the reasons that follow.

I.

■ As an initial matter, we note that subpart 23-9 applies to "power-operated *heavy equipment or machinery*" (12 NYCRR 23-9.1 [emphasis added]) such as excavating machines, pile drivers and motor trucks (*see* at 516 n 1). Shore never argued that the grinder was a hand tool subject to other provisions of the Code (*see e.g.* 12 NYCRR 23-1.10 [b] ["Electrical and pneumatic hand tools"]) or, in any event, was not "power-operated heavy

equipment or machinery" within the meaning of subpart 23-9. For purposes of this appeal, we therefore assume, without deciding, that section 23-9.2 (a) applies to a handheld nine-inch electrically-driven angle grinder.

Judge Smith objects to this assumption. While acknowledging the general rule that we do not resolve cases on grounds raised for the first time on appeal, he points to a concededly rarely invoked exception for a "newly raised point of law" that is "decisive" in a civil case and "could not have been obviated by factual showings or legal countersteps if it had been raised below" (Karger, Powers of the New York Court of Appeals § 17:1, at 591-592 [3d ed rev] [internal quotation marks and footnote omitted]). Declaring that the exception "fits this case perfectly," Judge Smith would affirm the Appellate Division's order in light of the "plain inapplicability of the regulation plaintiff relies on" (Smith, J., dissenting at 525).

This case does not fit the exception at all. We are not faced with a situation where a litigant "newly raise[s]" on appeal a "point of law" not put forward in the trial court—that is, we are not talking about an exception to the preservation requirement as it is classically defined. Here, Shore never so much as hinted much less claimed *before us* that section 23-9.2 (a) is inapplicable to the grinder involved in plaintiff's accident. For us now to decide this appeal on a distinct ground that we winkled out wholly on our own would pose an obvious problem of fair play. We are not in the business of blindsiding litigants, who expect us to decide their appeals on rationales advanced by the parties, not arguments their adversaries never made. In sum, plaintiff deserves an opportunity to refute the proposition on which the dissent would decide this appeal against him. And the opportunity may well be realized since our decision today certainly does not foreclose Shore, if it so chooses, from taking the position at trial that section 23-9.2 (a) is inapplicable to the grinder.

While appellate judges surely do not " 'sit as automatons' " (Smith, J., dissenting at 525, quoting Karger § 17:1, at 591), they are not freelance lawyers either. Our system depends in large part on adversary presentation; our role in that system "is best accomplished when [we] determine[ ] legal issues of statewide significance that have first been considered by both the trial and the intermediate appellate court" (*People v Hawkins*, 11 NY3d 484, 493 [2008, Kaye, Ch. J.]). Here, the specificity of section 23-9.2 (a) has, in fact, been considered by all four

departments of the Appellate Division, with differing results; by contrast, its applicability to a grinder was not briefed or argued by the parties to this appeal, and, insofar as we can tell, the general issue of whether section 23-9.2 (a) applies to an electrically-powered hand tool has not yet been addressed by any lower court.

## II.

When analyzing section 23-9.2 (a)'s specificity, the parties focused on the regulation's first three sentences, which are, in order, as follows:

(1) "All power-operated equipment shall be maintained in good repair and in proper operating condition at all times."

(2) "Sufficient inspections of adequate frequency shall be made of such equipment to insure such maintenance."

(3) "Upon discovery, any structural defect or unsafe condition in such equipment shall be corrected by necessary repairs or replacement."

Plaintiff concedes that the first sentence is "undoubtedly general and unenforceable." In his view, however, the second and third sentences, which he reads together, do more than "merely restate[ ] the common law duty to keep the worksite reasonably safe." Instead, he contends, "what makes the second and third sentences of the regulation specific" is that they "say[ ] inspect (that's a command), then upon discovery (that's the when) of a structural defect or unsafe condition (that's the circumstances calling for action . . . )[,] repair or replace (that's the action or positive concrete command)." Citing our decision in *Morris v Pavarini Constr.* (9 NY3d 47, 50 [2007]), plaintiff points out that specific provisions in a Code regulation are enforceable notwithstanding the general nature of other portions of the same regulation. Shore counters that the first three sentences in section 23-9.2 (a), considered together, "say[ ] nothing more than 'tools shouldn't be broken; you must check to make sure that tools aren't broken; and when you find that tools are broken, you must fix or replace them.' "

In our view, the first two sentences of section 23-9.2 (a)—which employ only such general phrases as "good repair," "proper operating condition," "[s]ufficient inspections," and "adequate frequency"—are not specific enough to permit recovery under section 241 (6) against a nonsupervising owner or general contractor. We reach the opposite conclusion about

the third sentence, however. This portion of the regulation imposes an affirmative duty on employers to "correct[ ] by necessary repairs or replacement" "any structural defect or unsafe condition" in equipment or machinery "[u]pon discovery" or actual notice of the structural defect or unsafe condition. As a result, the third sentence of section 23-9.2 (a) "mandates a distinct standard of conduct, rather than a general reiteration of common-law principles, and is precisely the type of 'concrete specification' that *Ross* requires" (*Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 351 [1998]). The next two sentences of the regulation describe requirements for servicing and repairing the equipment. In sum, an employee who claims to have suffered injuries proximately caused by a previously identified and unremedied structural defect or unsafe condition affecting an item of power-operated heavy equipment or machinery has stated a cause of action under Labor Law § 241 (6) based on an alleged violation of 12 NYCRR 23-9.2 (a).[2]

Here, plaintiff claims that there was no side handle available for the grinder on the day of his accident; that he complained to his supervisor about the missing handle—i.e., his employer had actual notice; that the absence of a handle constituted a structural defect in or an unsafe condition of the grinder; that his employer did not provide him with a handle or replace the allegedly defective grinder; and that the absence of the handle—i.e., the claimed structural defect or unsafe condition previously pointed out to his employer—proximately caused his injuries. Assuming that section 23-9.2 (a) is applicable, plaintiff has thereby alleged a breach of this provision of the Code. It would then remain for a jury to decide whether a violation, in fact, occurred; and whether the negligence of some party to, or participant in, the construction project caused plaintiff's injuries. If negligence is established, Shore would be vicariously liable for plaintiff's injuries without regard to fault.

---

**2.** Judge Graffeo suggests that we are departing from our precedent of "assess[ing] whether a regulation [is] specific enough to support Labor Law § 241 (6) liability by examining the language used in the regulation, without regard to the facts alleged in a particular case" (Graffeo, J., dissenting at 523). We disagree. We conclude that 12 NYCRR 23-9.2 (a) is specific enough to permit recovery under Labor Law § 241 (6) because the *language of the regulation* mandates particular conduct "[u]pon discovery"—or actual notice—of a structural defect or unsafe condition. An allegation that the plaintiff told his or her supervisor about the defective condition before the injury is simply one way of demonstrating the actual notice required by the language of the regulation.

Accordingly, the order of the Appellate Division should be reversed, with costs, and that branch of defendant's motion for summary judgment seeking dismissal of plaintiff's Labor Law § 241 (6) cause of action against it should be denied.

GRAFFEO, J. (dissenting). Because I believe that 12 NYCRR 23-9.2 (a) does not contain a command that is sufficiently specific to support liability under Labor Law § 241 (6), I respectfully dissent. This Court has distinguished between Industrial Code provisions that merely reiterate the common-law standard of care and those that mandate compliance with concrete specifications (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 504-505 [1993]). Only the latter impose a nondelegable duty on an owner or general contractor who does not actually control the injured party's work, giving rise to a Labor Law § 241 (6) claim. I agree with the First, Second and Third Departments that section 23-9.2 (a) does not contain the requisite specificity necessary for Labor Law § 241 (6) liability (*see Hassett v Celtic Holdings*, 7 AD3d 364, 365 [1st Dept 2004]; *Fairchild v Servidone Constr. Co.*, 288 AD2d 665, 667-668 [3d Dept 2001]; *Anarumo v Slattery Assoc.*, 298 AD2d 339, 340 [2d Dept 2002]).*

Although other subdivisions of section 23-9.2 include detailed specifications, such as section 23-9.2 (e) (certain power-operated machines that do not run on diesel fuel must be stopped during refueling), section 23-9.2 (a) does not. In *Ross v Curtis-Palmer Hydro-Elec. Co.* (81 NY2d at 504), we held that a regulation that imposed a "duty to provide materials and equipment of such kind and quality as a reasonable and prudent [person] experienced in construction . . . operations would require in order to provide safe working conditions" was too general to create a nondelegable duty (*see* 12 NYCRR 23-1.4 [a]). In contrast, in *Rizzuto v L.A. Wenger Contr. Co.* (91 NY2d 343 [1998]), a regulation that stated that "[i]ce, snow, water, grease and any other foreign substance which may cause slippery footing shall be removed, sanded or covered to provide safe footing" (12 NYCRR 23-1.7 [d]) was determined by us to be sufficiently specific. Similarly, in *Morris v Pavarini Constr.* (9 NY3d 47 [2007]), we concluded that a regulatory provision requiring that

---

* Because the majority bases its decision on the fact that plaintiff allegedly informed his employer of a defect in the tool before he was injured and the employer failed to remedy that defect, I presume the holdings in these Appellate Division decisions remain viable in circumstances where the plaintiff was unaware of the defective condition before the injury occurred and/or did not notify the employer.

forms be "braced or tied together so as to maintain position and shape" was sufficiently specific, while the portion of the regulation that directed that forms be "structurally safe" was not (*see* 12 NYCRR 23-2.2 [a]).

The provisions deemed actionable in *Rizzuto* and *Morris* each involved hazards identified with particularity in the regulation (e.g. slippery foreign substances on floors, forms that were not tied or braced to maintain position and shape) and concrete commands concerning how to remedy or avoid the identified hazards (e.g. the "foreign substance . . . shall be removed, sanded or covered"; "Forms . . . shall be properly braced or tied together so as to maintain position and shape"). But the regulation here contains no such directive. It broadly states that machines must be kept in "good repair" and "proper operating condition," and that unspecified "structural defect[s] or unsafe condition[s]" be remedied in some unidentified manner upon discovery.

As I see it, there is no distinction between the requirement that forms be kept structurally safe (which we deemed not sufficiently specific in *Morris*) and that structural defects/unsafe conditions be remedied. After all, the mandate that "[f]orms . . . shall be structurally safe" necessarily incorporates the command that a structural defect be remedied if it is discovered—yet we held in *Morris* that this part of the regulation was not actionable, and we did so even though the provision related to a specific construction element—forms. Because section 23-9.2 (a) does not identify a particular hazard with specificity or contain a concrete command relating to such a hazard, I believe it does nothing more than restate the common-law standard of care and does not give rise to a nondelegable duty on the part of an owner who did not control the project. I would, therefore, affirm the order of the Appellate Division, which granted summary judgment dismissing the Labor Law § 241 (6) claim.

I am also unpersuaded that the allegation that plaintiff told his supervisor about the tool's defective condition before the injury occurred alters the resolution of this case. Until today, we have assessed whether a regulation was specific enough to support Labor Law § 241 (6) liability by examining the language used in the regulation, without regard to the facts alleged in a particular case. While the actions plaintiff took after he discovered the alleged defect may be pertinent to a comparative fault defense, they are not relevant to the threshold question of whether the regulation on which he relies contains the concrete

mandate required to impose a nondelegable duty on an owner or general contractor.

As an alternative basis for affirmance, Judge Smith makes a compelling argument that section 23-9.2 (a) does not apply to the power hand tool involved in plaintiff's injury. But I cannot join in his dissent because this contention was neither preserved for review in the trial court nor raised by defendants in this Court. I view the preservation requirement as a constitutional limitation on this Court's jurisdiction (*see* NY Const, art VI, § 3 [a] ["The jurisdiction of the court of appeals shall be limited to the review of questions of law except where the judgment is of death, or where the appellate division . . . finds new facts"]). With very few exceptions not relevant here, a party must raise an argument in the trial court to create an issue of law that can be reviewed in this Court (*see e.g. Bingham v New York City Tr. Auth.*, 99 NY2d 355 [2003]). While we have recognized that some contentions present issues of law even if not preserved— such as errors so egregious that they affect the "mode of proceedings"—the possible inapplicability of the regulation in this case does not fall into any recognized exception. And even if the preservation hurdle could be surmounted, for purposes of this appeal, defendants waived the argument by not raising it in their briefs in this Court. It would therefore be improper to dismiss plaintiff's claim based on an issue that he has not had an opportunity to address.

SMITH, J. (dissenting). Subpart 23-9 of the Industrial Code is limited by its terms to "heavy equipment or machinery" (12 NYCRR 23-9.1, quoted in majority op at 516). Thus section 23-9.2, which is part of subpart 23-9, is plainly inapplicable to the hand tool involved in this case. Yet, because defendant did not raise that point, the majority feels compelled to decide whether, if the regulation were applicable to hand tools, it would be specific enough to support plaintiff's claim—an exercise akin to deciding whether I would be a bicycle if I had wheels. I think it is unwise to decide such hypothetical questions, and I do not think our preservation jurisprudence requires it.*

The authoritative work on practice in our Court, Karger, Powers of the New York Court of Appeals, states the "general rule"

---

* I acknowledge, however, that the majority has a point when it says it would be unfair to decide a question not argued *in this Court*. If I could persuade my colleagues not to require preservation here, I would favor inviting the parties to comment on the issue before we decided it.

that "the Court of Appeals will not review a question raised for the first time on appeal" (§ 17:1, at 589 [3d ed rev]). Karger adds:

> "Manifestly, however, if any such rule were to be applied in every case without qualification, it would often be stultifying. Thus, it might require appellate judges to sit as automatons, merely to register their reactions to the arguments which counsel had made below. The fortunes of litigation might then turn, not on the merits of a case, but on the skill or prescience of counsel in the court of first instance.

> "An exception to the general rule has accordingly long been applied, subject to certain qualifications, that a newly raised point of law may be entertained on appeal where it is one which is decisive of the appeal and which could not have been obviated 'by factual showings or legal countersteps' if it had been raised below." (*Id.* at 591-592 [footnotes omitted].)

The exception stated by Karger fits this case perfectly. The plain inapplicability of the regulation plaintiff relies on is decisive of this appeal, and could not have been obviated by any factual showings or legal countersteps if raised below.

Our preservation rule is an important one—so important that we have occasionally referred to it as a matter of "jurisdiction" (*see e.g. People v Turriago*, 90 NY2d 77, 80 [1997]). But it is not truly jurisdictional, in the sense of being a limitation on our power. We review unpreserved questions when common sense and practical necessity dictate that we should. Thus, in criminal cases, we review claimed "mode of proceedings" errors without regard for preservation (*e.g. People v Ahmed*, 66 NY2d 307, 310 [1985]); we review unpreserved claims of ineffective assistance of counsel, since it would be absurd to insist on preservation by the very counsel claimed to be ineffective (*e.g. People v Lewis*, 2 NY3d 224 [2004]); we review unpreserved claims relating to the sufficiency of accusatory instruments (*e.g. People v Alejandro*, 70 NY2d 133, 135, 139 [1987]) and the legality of sentences (*e.g. People v Samms*, 95 NY2d 52, 55-57 [2000]); and we review other claims where it is unreasonable to expect them to have been preserved below (*e.g. People v Louree*, 8 NY3d 541, 545-546 [2007]). We could do none of these things if the preservation rule were truly jurisdictional; common sense and practical necessity would be irrelevant.

Exceptions to the preservation requirement in civil cases (apart from quasi-criminal matters, like juvenile delinquency proceedings) are, for understandable reasons, much more rare than in criminal cases, but they do exist (*see Matter of Rivera v Smith*, 63 NY2d 501, 516 n 5 [1984] ["a new argument may be raised for the first time in the Court of Appeals if it could not have been obviated or cured by factual showings or legal countersteps in the court of first instance"]; *American Sugar Ref. Co. of N.Y. v Waterfront Commn. of N.Y. Harbor*, 55 NY2d 11, 25 [1982] [same]; *Telaro v Telaro*, 25 NY2d 433, 439 [1969] ["the general rule concerning questions raised neither at the trial nor at previous stages of appeal is far less restrictive than some case language would indicate"]). I do not suggest that we should make a regular practice of dispensing with the preservation requirement. But we clearly have the power to do so, and I think it is better to exercise that power in this case than to struggle with the difficult question of whether the regulation at issue, if it applied to the hand tool plaintiff used (which it does not), would entitle him to sue.

Chief Judge LIPPMAN and Judges CIPARICK and JONES concur with Judge READ; Judge GRAFFEO dissents and votes to affirm in a separate opinion; Judge SMITH dissents in another opinion in which Judge PIGOTT concurs.

Order reversed, etc.