Zeus Construction Services, LLC, Respondent, 
against
Fame Construction, Inc., Appellant, and Stamatis Stakias, Marika Stakias, Theodoros Toumazou, and "John Does," #1-10, Defendants.




Jerri Papapanayotou, Esq., for appellant.
King & King, LLP (Peter Kutil, Esq.), for respondent.

Appeal from a judgment of the Civil Court of the City of New York, Queens County (Sally E. Unger, J.), entered September 24, 2014. The judgment, after a nonjury trial, awarded plaintiff the principal sum of $9,020 as against defendant Fame Construction, Inc. and dismissed that defendant's counterclaim.




ORDERED that the judgment is reversed, without costs, and the matter is remitted to the Civil Court for a new trial limited to a determination of defendant Fame Construction, Inc.'s defense of a setoff against the $9,020 awarded to plaintiff, and its counterclaim, for the expenses it incurred in remedying alleged defects in plaintiff's work on the caulking of the rear yard and in plaintiff's work pertaining to stress cracks on the ground floor, "holes to steel plates," and "sealant," all of which were set forth in the punchlist, and for the entry of an appropriate judgment thereafter.
In this action, plaintiff seeks to recover the principal sum of $9,520 on its construction subcontract with defendant Fame Construction, Inc. (defendant). The action was brought against defendant and a number of individuals; however, the parties stipulated to the dismissal of so much of the complaint as was against the individuals. In its verified answer, defendant asserted a counterclaim for $7,500, which demand was, in effect, increased at trial to $14,800.
At a nonjury trial, the testimony established that defendant was the general contractor on a project to construct a delicatessen in Astoria, New York. Michael Andreou was defendant's president. The premises were leased to Develop Your Taste Corp., the entity that was developing the delicatessen. Theodore Toumazou was both the principal of Develop Your Taste Corp. and the owner of Artemis Plumbing. Toumazou oversaw the work on the project and paid for the work. Eleni Klouvas was employed as the comptroller of Artemis Plumbing and frequently communicated on behalf of Toumazou. Plaintiff Zeus Construction Services, LLC was a construction company owned by Fotios Mihas and his wife.
Defendant and plaintiff entered into a subcontract dated August 7, 2012, pursuant to [*2]which defendant hired plaintiff, as subcontractor, to perform work at the project, which initially included excavations, the installation of concrete, the application of stucco to a wall, and waterproofing an existing floor; the scope of the work was later extended to add rear yard concrete, among other items. The original subcontract price was $18,920, which, with change orders, was increased to $34,020.
Under paragraph 4.1.5 of the subcontract, defendant, as contractor, had the authority to reject any of plaintiff's work which did not conform to the prime contract. Paragraph 3.4.1 of the subcontract provided that, if plaintiff defaulted or neglected to perform "in accordance with this agreement," and, within three days following the receipt of a written notice, failed to remedy "such default or neglect," then, after three days following plaintiff's receipt of an additional written notice, defendant could, "without prejudice to any other remedy [defendant] may have," "make good such deficiencies and . . . deduct the reasonable cost thereof" from payments due to plaintiff. The subcontract further stated, at paragraph 7.2.1, that, in the event of plaintiff's persistent or repeated failure or neglect to carry out the work of the subcontract and its failure "within seven days after receipt of written notice to commence and continue correction of such default or neglect with diligence and promptness," then, "after seven days following receipt by [plaintiff] of an additional written notice and without prejudice to any other remedy," defendant was entitled to terminate the subcontract, "to finish [plaintiff's] Work by whatever method [defendant] may deem expedient," and, in effect, to charge plaintiff with the cost thereof.
Despite the August 7, 2012 subcontract date, plaintiff actually began performing excavations for the project on July 9, 2012. On July 12, 2012, the New York City Department of Buildings and the New York City Environmental Control Board issued violations because the excavations had been performed without permits; it was undisputed that Toumazou ultimately paid $5,800 in fines as a result of the nonpermitted excavations that plaintiff had performed.
The evidence at trial showed that, at least with respect to invoicing and the communication of a punchlist of deficiencies in plaintiff's work which, defendant asserted, required repair or remediation, the parties and their representatives had communicated in part through email. Plaintiff completed the bulk of its work before November 2012, following which the parties, through their representatives, had numerous communications concerning the adequacy of plaintiff's work. On December 18, 2012, Mihas, on behalf of plaintiff, sent an invoice by attaching it to an email to Klouvas. The invoice showed an unpaid balance of $9,020 on the subcontract; in his email, Mihas referenced a meeting "we had" on December 17, 2012 and stated that "[a]ll work as discussed in meeting will be taken care within . . . the next couple of days, upon completion we will like to receive final payment." This was followed, on December 20, 2012, by an email from Mihas to Klouvas, stating that the punchlist, which he listed as including "caulking rear yard," "stress cracks ground floor," "holes to steel plates," and "sealant," had been completed, and, on December 29, 2012, by another email from Mihas to Klouvas which referenced a walk-through of the project. In his testimony, Mihas denied that plaintiff had received any objection to its invoice, but confirmed on cross-examination that he had received a letter signed by Toumazou, dated January 25, 2013, which had been the first response he had received to the December 2012 emails.
In his testimony, Toumazou confirmed that he had signed the January 25, 2013 letter. Defendant first offered the letter into evidence following the testimony of defendant's president, [*3]Andreou, that he was familiar with Toumazou's signature and recognized it on the letter of January 25, 2013. The January 25, 2013 letter stated the following:
"As per our previous conversations and our emails to you over the past several weeks work at the above mentioned premises is defective and incomplete. If work is not completed as per our agreement by February 8, 2013 we will hire a new contractor to complete all work including your defective work and back charge you for any and all costs and expenses to have your work completed and corrected. . . ."
The Civil Court declined to admit to admit the letter into evidence on the ground that it was "not proper for this witness." After Klouvas testified that she had drafted the letter for Toumazou, that she had seen Toumazou sign the letter, and that she had thereafter mailed the letter by certified mail, return receipt requested, defendant again offered it into evidence. The court declined to admit the letter into evidence on the ground that defense counsel had failed to lay a sufficient foundation therefor.
Defendant's witnesses, Toumazou and Klouvas, further testified that, in April 2013, defendant had paid Tri Plex Industries, Inc. (Tri Plex) $7,000 to redo a portion of the work that plaintiff had performed. Defendant's witnesses testified that, besides paying for the corrective work performed by Tri Plex, defendant had also spent $2,000 to rectify a problem with a drain which plaintiff had installed incorrectly in the rear yard. In its counterclaim, defendant sought to recover the $7,000 and $2,000 sums it had spent to correct plaintiff's work, as well as the $5,800 which Toumazou had paid in fines.
Following the trial, the Civil Court awarded judgment to plaintiff in the principal sum of $9,020, upon a finding that plaintiff had proved its cause of action for an account stated. It dismissed defendant's counterclaim for the payment of fines, on the basis that the fines predated the parties' subcontract; rejected defendant's counterclaim for payments it had made to repair defects in drainage and a lack of waterproofing in the basement, on the ground that those alleged defects had not been included in the punchlist; and rejected the remainder of defendant's counterclaim for payments it had made to redo plaintiff's work, on the ground that defendant had failed to prove that it had submitted the prerequisite written notices to plaintiff for the correction of work, which notices were required under the subcontract.
In reviewing a determination made after a nonjury trial, the power of this court is as broad as that of the trial court, and this court may render the judgment it finds warranted by the facts, bearing in mind that the determination of a trier of fact as to issues of credibility is given substantial deference, as a trial court's opportunity to observe and evaluate the testimony and demeanor of the witnesses affords it a better perspective from which to assess their credibility (see Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 499 [1983]; Kimso Apts., LLC v Gandhi, 129 AD3d 670, 672 [2015]; Hamilton v Blackwood, 85 AD3d 1116 [2011]; Feria v Johnson, 54 Misc 3d 131[A], 2017 NY Slip Op 50032[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2017]).
Defendant asserted at trial, and continues to argue on appeal, that plaintiff lacked standing to sue due to its failure to demonstrate compliance with Limited Liability Company Law § 206. We need not reach the issue of whether this is a claim pertaining to standing or to capacity (see Wells Fargo Bank Minn., N.A. v Mastropaolo, 42 AD3d 239, 242 [2007]), since, in any event, defendant waived this issued by failing to raise it either in a pre-answer motion to dismiss the [*4]complaint or in its responsive pleading (see CPLR 3211 [a] [3], [e]; see also Perine Intl. Inc. v Bedford Clothiers, Inc., 143 AD3d 491, 492 [2016]; 32nd Ave., LLC v Angelo Holding Corp., 88 AD3d 986, 987 [2011]).
The Civil Court's determination in favor of plaintiff turned in part on a finding that, as plaintiff contended, Toumazou had acted as defendant's agent, and that, as such, he had authorized change orders and otherwise represented defendant in the administration of the subcontract, which finding defendant challenges. To the extent that defendant objects to plaintiff's failure to assert an agency relationship in the complaint, we note that the fact of agency does not constitute a cause of action, but rather denotes a basis for permitting one person to act on behalf of another (see generally 2A NY Jur 2d, Agency and Independent Contractors §§ 1, 2). 
A principal-agent relationship is established by evidence that one person—the principal—has allowed another to act on his or her behalf, subject to his or her control, and evidence of consent by the other person—the agent—to so act. An agent's authority may be express, implied, or apparent (see Time Warner City Cable v Adelphi Univ., 27 AD3d 551, 552 [2006]; Maurillo v Park Slope U-Haul, 194 AD2d 142, 146 [1993]). At trial, defendant's president, Andreou, testified that he had had no interactions with plaintiff during the administration of the subcontract, and indicated that Toumazou had been the person charged with administering the subcontract for defendant. This evidence, combined with certain documentary evidence, was sufficient to support the Civil Court's conclusion that Toumazou had acted as defendant's agent for the purpose of administering the subcontract. The evidence further showed that Klouvas, who had administered much of Toumazou's work, had acted as an agent of Toumazou, and thus, with respect to the subcontract, as a subagent of defendant. "An action taken by a subagent carries the legal consequences for the principal that would follow were the action instead taken by the appointing agent" (2A NY Jur 2d, Agency and Independent Contractors § 178).
We disagree with so much of the Civil Court's decision as found that plaintiff had proven its cause of action on an account stated, and on that basis awarded judgment to plaintiff. As is discussed below, we conclude that Toumazou's letter to plaintiff dated January 25, 2013 should have been admitted into evidence, at least for the purpose of establishing notice of defendant's dissatisfaction with plaintiff's work, defendant's intent to hire a contractor to correct plaintiff's work, and its intent to charge plaintiff for the cost to have the allegedly defective work corrected. We find that the letter constituted an objection within a reasonable period of time to plaintiff's invoice (see e.g. Kiss Constr., Inc. v Edison Elec. Contrs. Corp., 152 AD3d 575, 576 [2017]; Joseph W. Ryan, Jr., P.C. v Faibish, 136 AD3d 984, 985 [2016]) and precluded judgment in favor of plaintiff on its cause of action based on an account stated. 
The Civil Court also implicitly found, and we agree, that plaintiff, prima facie, proved its cause of action for breach of contract, since plaintiff proved, and defendant did not deny, that there remained $9,020 due to plaintiff under the subcontract. However, defendant asserted a counterclaim and sought a setoff against the amount owed. We thus turn to a consideration of defendant's counterclaim.
The $5,800 in fines that had been assessed prior to the contract date was paid by Toumazou, not defendant. Since, at trial, defendant failed to establish any basis for it to recover from plaintiff for such payments, we conclude that the Civil Court properly disallowed so much [*5]of defendant's counterclaim as sought to recover for the fines.
As noted above, the subcontract gave defendant, as contractor, the authority to reject plaintiff's work, and, either: (1) upon the provision of three days written notice followed by three days' additional notice, "make good such deficiencies and . . . deduct the reasonable cost thereof from the payments" due to plaintiff (paragraph 3.4.1); or (2) if plaintiff "persistently or repeatedly" failed to perform in accordance with the subcontract and failed "within seven days after receipt of written notice" of its default or neglect to correct its work, then, following an additional seven days' written notice to plaintiff, defendant was entitled to terminate the subcontract and "to finish [plaintiff's] Work by whatever method [defendant] may deem expedient" and, in effect, charge plaintiff for the expense of finishing plaintiff's work (paragraph 7.2.1).
The evidence at trial demonstrated that the parties had established a general course of conduct which included communication by email (see DHE Homes, Ltd. v Jamnik, 121 AD3d 744, 745 [2014]), and we conclude that the emails between Mihas, on behalf of plaintiff, and Klouvas, as agent of Toumazou and subagent of defendant, that were introduced into evidence, constituted sufficient initial written notice, under both paragraphs 3.4.1 and 7.2.1 of the subcontract, of defendant's dissatisfaction with plaintiff's work and defendant's demand that plaintiff rectify the problems with the punchlist items. While our dissenting colleague suggests that nothing in the emails prior to December 20, 2012 indicates any objection to plaintiff's work or the amount owed to plaintiff, we respectfully disagree, since, in an email of October 4, 2012, Klouvas referenced "some stuff that need [sic] to be repaired in the store before you get the balance," and in his response of the same date, Mihas referenced a punch list. In his email to Klouvas of December 18, 2012, Mihas again referenced work which, "as discussed in meeting will be taken care [of] within . . . the next couple of days." In our opinion, these emails, as well as the emails of December 20, 2012 and December 29, 2012, demonstrate that there were continuing communications between the agents for the parties beginning October 4, 2012 concerning defendant's dissatisfaction with plaintiff's performance under the subcontract.
We thus turn to whether defendant ever established the three-day additional notice required to invoke paragraph 3.4.1 of the subcontract or the seven-day additional notice required to invoke paragraph 7.2.1 of the subcontract. The Civil Court ruled that defendant had failed to lay an adequate foundation for the admission into evidence of the letter of January 25, 2013. However, as noted above, Toumazou identified the signature on the letter as his own, and Andreou testified that he recognized the signature on the letter to be that of Toumazou. Klouvas testified that she had drafted the letter for Toumazou, that she had seen him sign it, and that she had thereafter mailed the letter. In his earlier testimony, Mihas had already confirmed that he had received that letter. In these circumstances, the letter should have been admitted into evidence for the limited purpose of establishing that defendant, acting through Toumazou, had written to plaintiff and had made the statements set forth therein (see DeSario v SL Green Mgt. LLC, 105 AD3d 421, 422 [2013]; Park Slope Med. & Surgical Supply, Inc. v Travelers Ins. Co., 37 Misc 3d 19, 22-23 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2012]; see also Ferrara v Galluchio, 5 NY2d 16, 19-20 [1958]).
While the dissent asserts that defendant sought to introduce the letter of January 25, 2013 into evidence for the purpose of establishing that plaintiff's work had been defective and [*6]incomplete, we note that defense counsel did not specify the reason counsel was offering the letter into evidence. However, by its own terms, the letter was merely a notice stating that, in the event the work under the subcontract was not completed by February 8, 2013, defendant would "hire a new contractor to complete all work." We conclude that the letter of January 25, 2013 constituted a sufficient "additional written notice" received by plaintiff, so that, under paragraph 3.4.1 of the subcontract, defendant was entitled to "make good such deficiencies and . . . deduct the reasonable cost thereof from the payments then or thereafter due the Subcontractor." It also constituted a seven-day notice under paragraph 7.2.1 of the subcontract, pursuant to which, following the February 8, 2013 deadline set forth in the letter of January 25, 2013, defendant was entitled to terminate the subcontract, finish plaintiff's work by whatever method defendant deemed expedient, and, in effect, charge the expense of finishing plaintiff's work against the amount defendant owed plaintiff under the subcontract to plaintiff.
At trial, Toumazou testified that, after plaintiff had failed to perform adequate repairs, defendant had paid Tri Plex to correct plaintiff's work, and defendant introduced into evidence Tri Plex's itemized application for payment. Although defendant did not prove the reasonableness of the charges to finish the work, as required under paragraph 3.4.1 of the subcontract, defendant's right to a setoff or damages under paragraph 7.2.1 of the subcontract was not subject in the first instance to such a limitation (see Metropolitan Switch Bd. Mfg. Co., Inc. v B & G Elec. Contrs., Div. of B & G Indus., Inc., 96 AD3d 725, 726 [2012]; BIB Constr. Co. v Fireman's Ins. Co. of Newark, N.J., 214 AD2d 521, 524 [1995]; McKegney v Illinois Sur. Co., 180 App Div 507, 509 [1917]). Thus, by virtue of the emails which demonstrated plaintiff's acknowledgment of a punchlist, the January 25, 2013 letter, and proof of its payment to Tri Plex, defendant made out a prima facie case, at least for the deduction of the expense of finishing the punchlist items from the amount otherwise due to plaintiff under the subcontract.
Since the Civil Court did not admit the letter of January 25, 2013 into evidence, plaintiff had no reason to believe that defendant had established its termination of the subcontract or its contractual right to damages for remediation of the punchlist items. As a result, plaintiff may not have presented its entire defense to defendant's counterclaim or defendant's claim to a setoff. We therefore conclude that a new trial is required, limited to a determination of defendant's counterclaim and claim for a setoff for the punchlist items.
Accordingly, the judgment is reversed, and the matter is remitted to the Civil Court for a new trial limited to a determination of defendant's defense of a setoff against the $9,020 awarded to plaintiff, and its counterclaim, for the expenses it incurred in remedying alleged defects in plaintiff's work on the caulking of the rear yard and in plaintiff's work pertaining to stress cracks on the ground floor, "holes to steel plates," and "sealant," all of which were set forth in the punchlist, and for the entry of an appropriate judgment thereafter.
ALIOTTA and ELLIOT, JJ., concur.
WESTON, J.P., dissents and votes to affirm the judgment in the following memorandum.
In my opinion, the Civil Court properly denied defendant's counterclaim for breach of contract. Accordingly, I respectfully dissent and vote to affirm.
As the majority acknowledges, paragraph 3.4.1 of the subcontract specifically provides that if the subcontractor fails to perform under the contract and fails to correct the default "within three working days after receipt of written notice" from the contractor, then the contractor may, [*7]"after three days following receipt by the Subcontractor of additional written notice," correct the deficiencies itself and deduct the reasonable cost of doing so. I disagree with the majority's conclusion that the emails between plaintiff and Klouvas constituted the requisite initial written notice under the contract. Nothing in the emails prior to the December 20, 2012 repair list indicates any objection to plaintiff's work, repairs, or the amount owed plaintiff. Moreover, Klouvas admitted that certain claimed deficiencies were not included in the December 20, 2012 repair list.
Even if the prior emails constituted written notice of deficient work, the January 25, 2013 letter—which was dated after plaintiff had already filed notice of a mechanic's lien—did not satisfy the additional written notice requirement. The Civil Court refused to admit the letter into evidence after defendant had failed to lay a proper foundation, despite repeated opportunities to do so. Although the majority concludes that the letter should have been admitted into evidence for the purpose of showing notice, defendant never argued, either below or on appeal, that the letter should have been admitted on this basis. To the contrary, the record shows that defendant sought to introduce the letter solely for its truth. Defendant made several unsuccessful attempts to lay a foundation for admission of the letter for the purpose of establishing that the work, in fact, was defective and had not been completed. Buttressing the fact that the letter was offered for its truth, and not for notice, is defendant's argument on appeal that the evidence fails to establish that Toumazou acted as defendant's agent in the administration of the contract. Such argument is inconsistent with any attempt to admit the letter for the purpose of showing the requisite notice under the subcontract. If Toumazou was not an agent of defendant, then his letter to plaintiff cannot be deemed sufficient as providing the requisite notice under the subcontract. For this court now to order a new trial on the ground that the document should have been admitted for the limited purpose of establishing notice—a ground that was never asserted by the parties either at trial or on appeal—is patently improper. Appellate judges "are not freelance lawyers," who are "in the business of blindsiding litigants" (Misicki v Caradonna, 12 NY3d 511, 519 [2009]). Our role is to consider those issues that have been appealed so that all parties, including the adversely affected party, have a fair opportunity to be heard (see id.). Based on defendant's failure to comply with the notice provisions under the subcontract, the Civil Court properly denied defendant's counterclaim (see Northeast Constr. Group, Inc. v Deconstruction, Inc., 16 AD3d 357 [2005]).
Accordingly, I would affirm the judgment of the Civil Court.
ENTER:
Paul Kenny
Chief Clerk
Decision Date: June 15, 2018