Winkler v Halmar Intl., LLC (2022 NY Slip Op 03806)

Winkler v Halmar Intl., LLC

2022 NY Slip Op 03806

Decided on June 09, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: June 09, 2022

Before: Renwick, J.P., Mazzarelli, Gesmer, González, JJ. 

Index No. 150694/14, 595095/15, 595523/15 Appeal No. 15924 Case No. 2021-02764 

[*1]Doreen Ellen Winkler, etc., Plaintiff,
v
Halmar International, LLC, et al., Defendants, Haks Group, Inc., et al., Defendants-Respondents, City Of New York et al., Defendants-Appellants. [And First and Second Third-Party Actions.]

Cerussi & Spring, White Plains (Christopher Roberta of counsel), for appellants.
Byrne & O'Neill, LLP, New York (Elaine C. Gangel of counsel), for Haks Group, Inc., Haks Engineers, Architects and Land Surveyors, P.C., respondents.
Donovan Hatem LLP, New York (Scott K. Winikow of counsel), for JA Underground Professional Corporation, respondent.

Order, Supreme Court, New York County (Frank P. Nervo, J.), entered July 27, 2021, which, to the extent appealed from as limited by the briefs, denied defendants City of New York and New York City Department of Environmental Protection's (the City) motion for summary judgment dismissing the common-law claims as against them and on their contractual and common-law indemnification claims against the Halmar defendants and their contractual indemnification claim against defendants Haks Engineers, Architects and Land Surveyors, P.C. and JA Underground Professional Corporation (JA), unanimously modified, on the law, to grant the motion so as to conditionally grant contractual indemnification against Halmar, Haks and JA, and otherwise affirmed, without costs.
This action arises from the occurrence of a tragic event on December 2, 2013, when plaintiff's decedent, Scott Winkler, and his co-worker were killed during the construction of a public works project. The project entailed the connection of the Delaware and Catskill aqueducts. While the connection of the aqueducts took place on a New York City-owned property in Gardiner, New York, the particular work that is the subject of this action took place on property owned by defendant Halmar International (Halmar) in nearby Maybrook, New York. Participating in the work at the Maybrook site were the City of New York, general contractor Halmar, safety engineering firm Haks, and engineering consultant JA. As the plaintiff's decedent was conducting a concrete pour into the mockup's formwork, which was constructed by Halmar carpenters, the structure collapsed, crushing him and his co-worker. Plaintiff (decedent's wife) brought this action against the City, Halmar, Haks, and JA, alleging negligence and violations of Labor Law §§ 200, 240(1), and 241(6).
Supreme Court improperly dismissed the Labor Law § 200 claim against the City. Section 200 codifies a landowner's duty to provide workers with a reasonably safe place to work (see Lombardi v Stout, 80 NY2d 290 [1992]). Claims under the statute and common-law fall into two general categories: "those arising from an alleged defect or dangerous condition existing on the premises and those arising from the manner in which the work was performed" (Cappabianca v Skanska USA Bldg. Inc., 99 AD3d 139, 144 [1st Dept 2012]). "In order to prove liability [under the latter prong,] a plaintiff must show that the owner or agent have the authority to control the activity bringing about the injury to enable it to avoid or correct any unsafe condition" (Lemache v MIP One Wall Street Acquisition, 190 AD3d 422, 423 [1st Dept 2021], citing Rizzuto v L.A. Wenger Contr. Co., 91 NY2d 343, 352 [1998]; see also Gawel v Consolidated Edison Co. of N.Y., 237 AD2d 138 [1st Dept 1997]).
The record established that Halmar performed defective work, in that it improperly constructed the formwork by using an insufficient quantity of anchors and installing them improperly. The record also showed [*2]that this defective work was a proximate cause of the collapse of the formwork during the concrete pour, as was the failure to inspect the formwork before the pour took place. The record also sufficiently raised triable issues of fact as to whether the City had the authority to control the inspection of the formwork, to ensure that it was properly constructed and stable before the concrete pour took place.
Chuck Bunyaviroch, the Haks project resident engineer, testified that William Loftus, chief engineer for Halmar, was supposed to oversee the installation of the formwork and its inspection before the concrete pour. Loftus, however, testified that no one told him that he was supposed to supervise the installation and testing of the mockup, despite the fact that the Mockup Plan stated that Loftus would supervise the work. According to Bunyaviroch, Haks employee Craig Morgans was also responsible for inspecting the framework, observing Halmar's work and preparing the pre-pour checklist. Leon Deagone, Project Manager for Halmar, testified that Halmar was to inform Haks that a pour was being planned so that Haks could inspect the formwork prior to the pour. He further testified that the formwork had to be completed before Haks' inspection.
According to Bunyaviroch, Haks inspector Morgans was supposed to perform the pre-pour inspection and checklist prior to the pour commencing. Morgans, however, testified that he did not perform any inspection of the concrete formwork before the concrete pour. Nor did he prepare a pre-pour checklist at the location because he considered Maybrook "offsite." He acknowledged, however, that if the checklist had been completed, it would have included inspection of the formwork. The inspection would also have included comparing the shop drawings with the formwork as built. Morgans also knew that the failure to have a pre-pour checklist prepared for the Maybrook location was a deviation from Haks's quality management plan. Ed Sturm, who was employed by JA as the assistant resident engineer on the project, testified that, prior to the concrete pour, he advised his direct supervisor, NYC employee Kris Lovelett, that he believed that the formwork had not been completed and that the ironworkers were not ready to proceed. Sturm alleges that Lovelett overruled him and ordered the concrete pour to proceed as scheduled, lest there be a delay to the project schedule. Accordingly, Sturm prepared the notice to place form, which authorized the concrete pour to proceed. While Lovelett denied having any authority over Sturm, or over any other JA or Haks employee, both Sturm and Bunyaviroch testified that they both worked under the direct supervision of Lovelett. This testimony created questions of fact as to whether the City had authority to stop the concrete pour because of the lack of a prior inspection and whether the failure to exercise such authority was a proximate cause of the collapse of the formwork (see Rizzuto, 91 NY2d at [*3]352-353; Freitas v New York City Tr. Auth, 249 AD2d 184 [1st Dept 1998]).
The City was not entitled to dismissal of the Labor Law § 200 claim against it, nor was the City entitled to dismissal of the common-law negligence claims and cross claims against it. Similarly, because it has not been established that the City is free from active negligence, summary judgment on the issue of the City's cross claim for common-law indemnification against Halmar is premature. To establish a claim for common-law indemnification, the one seeking indemnity must prove not only that the proposed indemnitor was guilty of some negligence that contributed to the causation of the accident but also that it was not guilty of any negligence beyond the statutory liability (see Priestly v Montefiore Medical Center/Einstein Medical Center, 10 AD3d 493 [1st Dept 2004]).
The City, however, is entitled to conditional contractual indemnification by Halmar since the indemnification provision only requires that the accident arose out of Halmar's work (see Urbina v 26 Ct. St. Assoc., LLC, 46 AD3d 268, 271 [1st Dept 2007]). Although on its face, the indemnity provision in the contract between the City and Halmar is very broad, the City may nonetheless enforce it. The indemnity provision does not run afoul of General Obligations Law § 5-322.1, because it contemplates indemnification to the "fullest extent of the law," which means that the City is not seeking indemnification for its own negligence (see Brooks v Judlau Contr., Inc., 11 NY3d 204, 210 [2008]). However, the extent to which the City is entitled to indemnification from Halmar depends on the extent to which the City's negligence is determined to have contributed to the accident.
The City is also entitled to conditional contractual indemnification by Haks. The indemnification provision in the contract between the City and Haks also contemplates indemnification to the "fullest extent of the law," which means that the City is not seeking indemnification for its own negligence (see Brooks, 11 NY3d at 210). Moreover, the indemnification provision limits the City's right to indemnification to where the accident arose out the negligent acts of Haks or of its subcontractors, which is the case here. As indicated, Morgans, the Haks inspector, testified that he was required but did not prepare a pre-pour checklist. He acknowledged, however, that if the checklist had been completed, it would have included inspection of the form. Morgans, who had authority to stop the work, also suspected during the concrete pour that the structure did not have the external bracing called for in the plans, and heard the structure make noises that indicated to him that it had shifted, but he did not stop the work. However, the extent to which the City is entitled to indemnification from Haks depends on the extent to which Haks' negligence is determined to have contributed to the accident (see Hughey v RHM-88, LLC, 77 AD3d 520, 522-523 [1st Dept 2010]).[*4]
The City is entitled to conditional contractual indemnification by JA. In relevant part, the Haks/JA subcontract states, "In the event the Prime Agreement [City/Haks contract] contains an Indemnification provision, the Prime Agreement's [City/Haks contract] indemnity provision supersedes this provision "Article X" under the Subconsultant Agreement [Haks/JA subcontract] and Subconsultant [JA] agrees to indemnity Prime [Haks] and all other parties named as indemnitees as required by the indemnity provisions of the Prime Agreement [City/Haks contract]." The City/Haks contract indeed contains an indemnification clause, which states:
"The Contractor shall defend, indemnify and hold the City, its officers and employees harmless from any and all claims (even if the allegations of the lawsuit are without merit) or judgments for damages on account of any injuries or death to any person or damage to any property and from costs and expenses to which the City, its officers and employees may be subjected or which it may suffer or incur allegedly arising out of or in connection with any operations of the Contractor and/or its subcontractors to the extent resulting from any negligent act of commission or omission, any intentional tortious act, or failure to comply with the provisions of this Agreement or of the Laws. Insofar as the facts or Law relating to any claim would preclude the City from being completely indemnified by the Contractor, the City shall be partially indemnified by the Contractor to the fullest extent permitted by Law."
Based on the above-quoted language, the indemnity provision in the City/Haks contract is incorporated by reference into the Haks/JA subcontract. Moreover, substituting "JA" for "Contractor," the indemnity provision requires JA to indemnify the City for damages incurred "arising out of or in connection with any operations of the Contractor and/or its subcontractors to the extent resulting from any negligent act of commission or omission, any intentional tortious act, or failure to comply with the provisions of this Agreement or of the Laws." The extent to which the City is entitled to indemnification from JA depends on the extent to which the City's negligence is determined to have contributed to the accident. While the indemnity provision is also very broad, the City may nonetheless enforce it; it contemplates that the City "shall be partially indemnified . . . to the fullest extent permitted by Law" which means that the City is not seeking indemnification for its own negligence (see Brooks, 11 NY3d at 210).
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 9, 2022