| |
|---|
| **Nolan v Structure Tone, LLC.** |
| 2024 NY Slip Op 34318(U) |
| December 6, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 156632/2018 |
| Judge: David B. Cohen |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:   HON. DAVID B. COHEN

*Justice*

PART      58

--------------------------------------------------------------------------X

MARK W. NOLAN,

Plaintiff,

- v -

STRUCTURE TONE, LLC., RCPI LANDMARK PROPERTIES, TISHMAN SPEYER PROPERTIES, LP, EUROTECH CONSTRUCTION CORP., CAPITAL CONSTRUCTION SYSTEMS INC.,

Defendants.

--------------------------------------------------------------------------X

STRUCTURE TONE, LLC., RCPI LANDMARK PROPERTIES, TISHMAN SPEYER PROPERTIES, LP

Plaintiffs,

-against-

NEAD ELECTRIC, INC.

Defendant.

--------------------------------------------------------------------------X

STRUCTURE TONE, LLC., RCPI LANDMARK PROPERTIES, TISHMAN SPEYER PROPERTIES, LP

Plaintiffs,

-against-

EUROTECH CONSTRUCTION CORP.

Defendant.

--------------------------------------------------------------------------X

INDEX NO.     156632/2018

MOTION DATE     03/29/2024

MOTION SEQ. NO.   004 005 006

**DECISION + ORDER ON MOTION**

Third-Party
Index No. 595048/2019

Second Third-Party
Index No. 595353/2021

The following e-filed documents, listed by NYSCEF document number (Motion 004) 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 182, 184, 186, 212, 216, 218, 224, 257, 258, 259, 260, 261, 262, 263, 264, 289

were read on this motion to/for               JUDGMENT - SUMMARY        .

The following e-filed documents, listed by NYSCEF document number (Motion 005) 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160,

[* 1]

178, 181, 183, 185, 187, 213, 217, 219, 225, 251, 252, 253, 274, 275, 276, 277, 278, 279, 280, 281, 290, 291, 292

were read on this motion to/for                           <u>        SUMMARY JUDGMENT(AFTER JOINDER     </u>.

The following e-filed documents, listed by NYSCEF document number (Motion 006) 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 214, 220, 223, 226, 227, 228, 229, 230, 231, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 244, 245, 246, 247, 248, 249, 250, 254, 255, 256, 265, 266, 267, 268, 269, 270, 271, 272, 273, 282, 283, 284, 285, 286, 287, 288

were read on this motion to/for                           <u>            JUDGMENT - SUMMARY           </u>.

In this personal injury Labor Law action, defendant/third-party defendant Eurotech Construction Corp. moves for an order granting it summary judgment on its counterclaims against co-defendant Capital Construction Systems, Inc. for contractual and common-law indemnity and breach of contract (mot. seq. 004). Capital opposes.

In motion sequence five, defendants/third-party/second third-party plaintiffs Structure Tone, Inc., RCPI Landmark Properties L.L.C., and Tishman Speyer Properties, L.P. (collectively Owner defendants) move for an order granting them summary judgment on their second third-party complaint against Eurotech, filed in this action, and granting them summary judgment on their cross-claims against Eurotech in another pending action in this court (index number 150968/21). Owner defendants also move for summary judgment on their cross-claims against Capital filed in another action (index number 157449/21). Eurotech and Capital oppose.

By notice of motion, Capital moves for an order granting it summary dismissal of the complaint and all counterclaims and cross-claims against it (mot. seq. 006). Plaintiff and Owner defendants oppose.

The motions are consolidated for disposition. The other index numbers have been consolidated into the instant action (NYSCEF 177).

## I.    PERTINENT BACKGROUND

Based on the parties' statements and counterstatements of material facts, the following facts are undisputed:

### A.    Plaintiff's accident

On January 31, 2018, plaintiff was injured while working on a project taking place at 30 Rockefeller Plaza in Manhattan.  RCPI owns the premises, while Tishman was RCPI's agent. Structure Tone was the general contractor, and it employed laborers to clean debris during the project (NYSCEF 159).

At the time of his accident, plaintiff was working as a journeyman/wireman employed by third-party defendant NEAD Electric.  Plaintiff's work involved installing electrical conduit, wires, pulling wires, electrical pipes and boxes, and other electrical work.  He was supervised only by NEAD's general foreman on the project (NYSCEF 164).

According to Eurotech's witness, the project involved the installation of a grid ceiling, which consists of black iron, ceiling panels, and pencil rods.  Eurotech's work at the project did not involve the use of pencil rods, while Capital's did.  Capital was expected to use its own equipment, tools and materials (NYSCEF 166), and was the only contractor that used pencil rods for its work (NYSCEF 157).

On the accident date, plaintiff observed a laborer from a "ceiling company" drill holes in the ceiling and cut and install pencil rods.  The laborer was using an A-frame ladder to access the ceiling, and after he cut and installed the rods in the ceiling, he cut off the excess and allowed it to fall on the floor.  Although Structure Tone's laborers were responsible for cleaning debris from the floor, it was customary practice that a worker cutting pencil rods would catch the trimmings in a basket or something to keep them from falling on the floor (NYSCEF 164-166).

[* 3]

Plaintiff testified at a deposition that at approximately 11 am, he stepped on two cut pieces of pencil rod while descending an A-frame ladder and fell to the floor (NYSCEF 173, 173). Plaintiff's foreperson took a picture after his accident, which does not show any pencil rods around the ladder (NYSCEF 280).

At a deposition, Capital's vice president testified that Capital's project foreperson told him that they had started working at the premises a few days before plaintiff's accident and that they had not yet reached the side of the floor where plaintiff was injured. Capital's employees only worked using scaffolds, not ladders, and pictures taken of the accident showed that the room did not yet have walls in place, and ceilings would only be installed after the walls were installed (NYSCEF 158).

Eurotech's witness testified that while the walls in the room were constructed, no sheetrock had been installed, and that Capital was not permitted to install iron in the ceilings unless sheetrock had first been installed (NYSCEF 190).

Structure Tone's superintendent investigated plaintiff's accident the day of the accident and found no debris or pencil rods on the floor around the ladder (NYSCEF 157). Incident reports prepared by plaintiff's foreperson reflect that he told the foreperson that he stepped on a pencil rod while stepping off the ladder (NYSCEF 148).

### B. Applicable documents

In December 2017, Structure Tone entered into a subcontract with Eurotech for the project, and Eurotech entered into a subcontract with Capital.

### 1. Structure Tone-Eurotech subcontract

The parties' subcontract provided that Eurotech would indemnify the premises owner, the project owner, and all parties required to be indemnified in the prime contract entered into by

Structure Tone, from any claims arising in whole or in part and in any manner from the acts, omissions, breaches or defaults of Eurotech and its sub-subcontractors in connection with any work performed by Eurotech or its sub-subcontractors pursuant to a subcontractor or purchase order (NYSCEF 159).

Eurotech also agreed to defend and bear all defense costs incurred in any action brought against Structure Tone or the owner related to any claims outlined above.

### 2.      Eurotech-Capital subcontract

On or before January 31, 2018, Eurotech subcontracted with Capital to perform ceiling work on the 56th floor of the premises.  The subcontract provided that Capital would indemnify Eurotech and "the owner or owner's representative, the general contractor and/or the construction manager" from all claims arising out of or connected with Capital's work or any act or omission, and/or "any accident or occurrence which happens, or is alleged to have happened, in or about the place where such work is being performed or in the vicinity thereof."  It also required Capital to obtain $5 million in "combined single limit" insurance policy coverage for bodily injuries, and to add Eurotech as an additional insured (NYSCEF 169).

Around July 30, 2018, in exchange for partial payment, Capital executed a Partial Release by Subcontractor/Supplier – Partial Waiver of Claims and Liens and Release of Rights, in favor of Eurotech, which provides that Capital agrees to personally hold Eurotech harmless and guarantees full and prompt payment for all obligations and liability for which Eurotech may become liable if Capital does not fulfill its obligations under the subcontract or this agreement. Capital also warranted that its work at the project would be performed in a "good workmanlike manner."  Capital executed a similar agreement in August 2018 and, upon receipt of final payment, again in September 2018 (NYSCEF 171).

### 3.    Insurance certificates

On December 14, 2017, Eurotech, as the insured, obtained a certificate of insurance, showing that it obtained commercial general liability coverage from August 1, 2017 to August 1, 2018, with a combined personal injury limit of $6 million.  The certificate holder was identified as Structure Tone, and the description of operations provided as follows:

> RE: Lazard Freres, 30 Rockefeller Plaza, New York, NY 10112 . . ., Structure Tone LLC., owners, their trustees, officers, directors, members, agents, affiliates, and employees; Lazard Freres & Co. LLC and their officer, employees, and agents are included as Additional Insureds with respect to this project, but only if required by written and signed contract per attached omnibus additional insured endorsement forms. This insurance is primary and non- contributory per attached policy form.

(NYSCEF 150).

Several sections of the insurance policy provide in the section naming additional insureds: "Where required by written contract." (*id.*).

Another certificate of insurance, dated December 13, 2017, lists Lazard Group LLC as the certificate holder, and names, as pertinent here, RCPI and Tishman as additional insureds (*id.*).

In January 2018, Eurotech obtained similar insurance with $7 million in personal injury coverage, this time naming RCPI and Tishman as the certificate holders, and including RCPI and Tishman as additional insureds (*id.*).

### II.    EUROTECH'S MOTION (SEQ. 004)

### A.    Contentions

Eurotech alleges that it is entitled to full or conditional contractual indemnity from Capital for plaintiff's accident as it arose out of or was connected with Capital's work, as Capital was the ceiling company performing work on the project and the only contractor using or installing pencil rods on the 56th Floor.  Eurotech also asserts entitlement to common-law

indemnity and reimbursement of all attorneys fees and costs it has incurred as it was not liable for plaintiff's accident. Finally, Eurotech contends that Capital did not procure the required insurance coverage (NYSCEF 175).

Capital claims that triable issues remain as to whether the accident arose out of its work on the project, observing that there is testimony that no one observed pencil rods at the scene of the accident after plaintiff fell, either in the ceiling, ostensibly after being installed, or on the floor. Moreover, evidence indicates that laborers employed by Structure Tone were responsible for cleaning debris, which would have included pencil rods (NYSCEF 257).

In reply, Eurotech reiterates its prior arguments (NYSCEF 289).

B.      Analysis

1.      Contractual and common-law indemnity

"A party is entitled to full contractual indemnification provided that the 'intention to indemnify can be clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances'" (*Karwowski v 1407 Broadway Real Estate, LLC*, 160 AD3d 82, 87-88 [1st Dept 2018], quoting *Drzewinski v Atlantic Scaffold & Ladder Co.*, 70 NY2d 774, 777 [1987]).

"In contractual indemnification, the one seeking indemnity need only establish that it was free from any negligence and was held liable solely by virtue of the statutory liability" (*Correia v Prof. Data Mgt.*, 259 AD2d 60, 65 [1st Dept 1999]; *see also Lexington Ins. Co. v Kiska Dev. Group LLC*, 182 AD3d 462, 464 [1st Dept 2020] [denying summary judgment where indemnitee "has not established that it was free from negligence"]). Further, unless the indemnification clause explicitly requires a finding of negligence on behalf of the indemnitor, "[w]hether or not the proposed indemnitor was negligent is a non-issue and irrelevant" (*Correia*, 259 AD2d at 65).

"To establish a claim for common-law indemnification, the one seeking indemnity must prove not only that the proposed indemnitor was guilty of some negligence that contributed to the causation of the accident but also that it was not guilty of any negligence beyond the statutory liability" (*Winkler v Halmar Intl.*, LLC, 206 AD3d 458, 461 [1st Dept 2022] [citations omitted]). "The right to contribution and apportionment of liability among alleged multiple wrongdoers arises when they each owe a duty to plaintiff or to each other and by breaching their respective duties they contribute to plaintiff's ultimate injuries" (*Trustees of Columbia Univ. v Mitchell/Giurgola Assoc.*, 109 AD2d 449, 454 [1st Dept 1985]).

Eurotech met its prima facie burden through plaintiff's testimony that he saw someone working on the ceiling with pencil rods before he fell and that he fell on rods, and other testimony that Capital was the only company on the project that worked with pencil rods.

However, there is other testimony indicating that several people, including plaintiff's foreperson, did not see any pencil rods in the vicinity of the ladder after plaintiff fell, and that Capital had not started working on the ceiling and had not installed any rods in the area where plaintiff was working. Moreover, a photograph of the accident scene does not show any rods either installed or on the floor. There is also testimony that cleaning up debris such as pencil rods would have been the responsibility of Structure Tone's laborers, not Capital's.

Therefore, triable issues remain as to whether plaintiff's accident arose out of or was connected with Capital's work on the project, and thus, Eurotech is not entitled to summary judgment on its indemnity counterclaims against Capital.

<u>2.      Insurance</u>

"A party moving for summary judgment on its claim for failure to procure insurance meets its prima facie burden by establishing that a contract provision requiring the procurement

of insurance was not complied with" (*Dorset v 285 Madison Owner LLC*, 214 AD3d 402, 404 [1st Dept 2023] [internal quotation marks and citation omitted]). "The burden then shifts to the opposing party, who may raise an issue of fact by tendering the procured insurance policy in opposition to the motion" (*Benedetto v Hyatt Corp*., 203 AD3d 505, 506 [1st Dept 2022] [citation omitted).

Eurotech does not demonstrate that Capital failed to obtain any particular insurance coverage or to have it named as an additional insured. Rather, it contends that if Capital had obtained the required insurance, Eurotech would have been covered in connection with this action, which is insufficient to meet its prima facie burden of showing that Capital failed to obtain specific insurance (*see Sandoval v 201 W. 16 Owners Corp.*, 231 AD3d 500 [1st Dept 2024] [defendant failed to make prima facie showing that other defendant did not procure required insurance]).

### III. OWNER DEFENDANTS' MOTION (SEQ. 005)

Owner defendants' motion seeks judgment on their counterclaims/third-party claims against Eurotech and Capital, based on the allegation that Capital's work caused or contributed to plaintiff's accident, and that Eurotech is contractually responsible for Capital's work. However, as discussed above (*supra*, II.), there are triable issue as to whether Capital performed work which caused or contributed to the accident, and also as to whether Structure Tone may be held liable for failing to remove debris, including pencil rods. The daily log on which they rely is not dispositive as it does not mention Capital at all, nor provides the location of the area where Eurotech was allegedly framing ceilings. Owner defendants are thus not entitled to judgment on their indemnity and defense claims against Eurotech and Capital.

[* 9]

Nor do Owner defendants demonstrate that Eurotech and Capital failed to obtain the required insurance as they do not address the certificates of insurance or insurance policies submitted on this motion.

## IV. CAPITAL'S MOTION (SEQ. 006)

Capital moves for judgment dismissing plaintiff's Labor Law §§ 200, 240(1), and 241(6) and common-law negligence claims against it.

### A. Labor Law §240(1)

As to Labor Law § 240(1), Capital first contends that it is not a statutory agent covered by the statute, and the injury-causing activity is not covered under 240(1). Plaintiff alleges that Capital is a statutory agent as it controlled the cutting of pencil rods, which caused his injury.

A party may be held liable as a statutory agent if it was delegated the authority to supervise and control the work that gave rise to the injury (*see Solano v Skanska USA Civ. Northeast Inc.*, 148 AD3d 619, 619-620 [1st Dept 2017]; *Fraser v Pace Plumbing Corp.*, 93 AD3d 616, 616 [1st Dept 2012]).

As the Court of Appeals has explained,

> Although sections 240 and 241 now make nondelegable the duty of an owner or general contractor to conform to the requirement of those sections, the duties themselves may in fact be delegated. When the work giving rise to these duties has been delegated to a third party, that third party then obtains the concomitant authority to supervise and control that work and becomes a statutory 'agent' of the owner or general contractor. Only upon obtaining the authority to supervise and control does the third party fall within the class of those having nondelegable liability as an 'agent' under sections 240 and 241.

(*Russin v Louis N. Picciano & Son*, 54 NY2d 311, 317-318 [1981] [citations omitted]; *see also Walls v Turner Constr. Co.*, 4 NY3d 861, 864 [2005] ["unless a defendant has supervisory control and authority over the work being done when the plaintiff is injured, there is no statutory agency conferring liability under the Labor Law"]).

[* 10]

Here, to the extent that plaintiff was injured by slipping on pencil rods, and if Capital had a duty to remove or clean any pencil rod debris, then it may be held liable as a statutory agent. As those questions remain unresolved, Capital is not entitled to dismissal of plaintiff's Labor Law § 240(1) claim on this ground (*see Tejada-Rodriguez v 76 Eleventh Ave. Property Owner LLC*, 231 AD3d 419 [1st Dept 2024] [court properly found that contractor was statutory agent under 240(1) as it had authority to exercise control over work that caused plaintiff's injury, even if did not exercise that authority with respect to plaintiff's work]; *Moore v URS Corp.*, 209 AD3d 438 [1st Dept 2022] [plaintiff raised triable issue as to whether defendants had authority to control activity that caused injury]).

There is no merit to Capital's claim that the accident does not fall within the purview of Labor Law § 240(1) (*see Rivera v 712 Fifth Ave. Owner LP*, 229 AD3d 401 [1st Dept 2024] [liability under 240(1) shown when adequate safety devices to prevent ladder from slipping or plaintiff from falling were absent; plaintiff not required to prove that ladder was defective or that it fell]), nor the claim that the plaintiff was the sole proximate cause of the accident due to his placement of the ladder (*see Rodas-Garcia v NYC United LLC*, 225 AD3d 556 [1st Dept 2024] [even if plaintiff misplaced ladder, it at most established comparative negligence, which is no defense to Labor Law § 240(1) claim]).

Capital thus fails to establish that it may not be held liable for a violation of Labor Law § 240(1).

### B.     Labor Law § 241(6) claim

Labor Law § 241(6) imposes a nondelegable duty on premises owners and contractors at construction sites to provide reasonable and adequate safety to workers.  To establish a claim under the statute, a plaintiff must show that a specific, applicable Industrial Code regulation was

violated, and that the violation caused the complained-of injury (*Cappabianca v Skanska USA Bldg. Inc.*, 99 AD3d 139, 146, 950 N.Y.S.2d 35 [1st Dept 2012] [internal citations omitted]).

Here, the only Industrial Codes at issue are 12 NYCRR 23-1.7(d) and (e). 12 NYCRR 23-1.7(d) applies to slippery conditions at a construction site, such as ice, snow, water, grease, or some other foreign substance (*see Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 350-351 [1998]). It includes only "those substances that share a quality common to the enumerated items [of ice, snow, water, and grease]," i.e., "types of material that are slippery when in contact with an area where someone walks" (*Bazdaric v Almah Partners LLC*, 41 NY3d 310, 320 [2024]). As plaintiff alleges that he tripped over pieces of iron pencil rods, this section is inapplicable (*see Costello v Judlau Contr., Inc.*, 2021 WL 5920303 [Sup Ct, New York County 2021] [Industrial Code section did not apply as plaintiff tripped on sheetrock, wood, and pipe]).

12 NYCRR 23-1.7(e)(1) "requires that all passageways shall be kept free accumulations or dirt and debris and from obstructions or conditions which could cause tripping." As plaintiff was not working in a passageway but rather an open work area, this section is also inapplicable (*Purcell v Metlife, Inc.*, 108 AD3d 431 [1st Dept 2013] [accident did not occur in passageway but rather open work area]).

12 NYCRR 23-1.7(e)(2) "provides that the parts of floors, platforms[,] and similar areas where persons work or pass shall be kept free from accumulations of dirt and debris and from scattered tools and materials." Capital claims that to the extent that there were pencil rods in the work area, it was Structure Tone's responsibility to clean them, and thus the alleged debris may not be attributable to Capital. As there remain issues of fact as to which entity was responsible for cleaning up the alleged debris, Capital is not entitled to dismissal of this claim.

[* 12]

### C.    Labor Law § 200/common-law negligence

"Section 200 of the Labor Law is a codification of the common-law duty imposed upon an owner or general contractor to provide construction site workers with a safe place to work (*Comes v New York State Elec. & Gas Corp.*, 82 NY2d 876, 877 [1993] [internal quotation marks and citations omitted]).  Claims under the statute and the common-law arise in two ways, "those arising from an alleged defect or dangerous condition existing on the premises and those arising from the manner in which the work was performed.  Where an existing defect or dangerous condition caused the injury, liability attaches if the owner or general contractor created the condition or had actual or constructive notice of it.  Where the injury was caused by the manner and means of the work, including the equipment used, the owner or general contractor is liable if it actually exercised supervisory control over the injury-producing work" (*Cappabianca v Skanska USA Bldg. Inc.*, 99 AD3d 139, 143-144 [1st Dept 2012] [internal quotation marks and citations omitted]).

To the extent that the accident was caused by the means and methods of plaintiff's work, Capital had no supervisory control over it.  However, there remain triable issues as to whether Capital created the dangerous condition, i.e. the pencil rod debris, that caused plaintiff's accident.

### D.    Cross-claims and counterclaims

Given that triable issues remain as to Capital's liability here, it is not entitled to dismissal of any cross-claims and counterclaims for indemnity and contribution against it.

[* 13]

## V.    CONCLUSION

Accordingly, it is hereby

ORDERED that defendant/third-party defendant Eurotech Construction Corp.'s motion for summary judgment on its counterclaims against co-defendant Capital Construction Systems, Inc. for contractual and common-law indemnity and breach of contract (mot. seq. 004) is denied in its entirety; it is further

ORDERED that the motion of defendants/third-party/second third-party plaintiffs Structure Tone, Inc., RCPI Landmark Properties L.L.C., and Tishman Speyer Properties, L.P. for an order granting them summary judgment on their second third-party complaint and cross-claims against Eurotech and their cross-claims against Capital (mot. seq. 005) is denied in its entirety; it is further

ORDERED that Capital Construction Systems, Inc.'s motion for summary dismissal of the complaint and all counterclaims and cross-claims against it (mot. seq. 006) is granted to the extent of dismissing plaintiff's Labor Law § 241(6) claim as to all underlying Industrial Code violations except 12 NYCRR 23-1.7(e)(2), and is otherwise denied; and it is further

ORDERED that the parties appear for a settlement/trial scheduling conference on March 26, 2025 at 9:30 am in Part 58, 71 Thomas Street, Room 305, New York, New York.

2024120915271 3DDCOHEND6E2FE214EAF48F3A9D0187797 35589F

__12/6/2024__
DATE

DAVID B. COHEN, J.S.C.

| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |

[* 14]

14 of 14