Emery v Village of Clinton (2025 NY Slip Op 25049)

[*1]

Emery v Village of Clinton

2025 NY Slip Op 25049

Decided on March 3, 2025

Supreme Court, Oneida County

Clark, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on March 3, 2025
Supreme Court, Oneida County

Robert C. Emery and Lindsay Emery, Plaintiffs,

against
Village of Clinton and John Spinella Excavation Company, Inc., Defendants.

Index No. EFCA2021-002071

Victoria Lightcap, Esq. and Lisa Solomon, Esq.
Finkelstein & Partners, LLP
Attorney for Plaintiffs
1279 Route 300, Box 1111
Newburgh, New York 12551
(845) 562-0203
Gerard E. O'Connor, Esq.
Law Offices of Gerard E. O'Connor
Attorney for Defendant Village of Clinton
43 Court Street, Suite 600
Buffalo, New York 14202
(716) 854-4705
Matthew P. Germain, Esq.
Smith Sovik Kendrick & Sugnet, P.C.
250 South Clinton Street, Suite 600
Syracuse, New York 13202
(315) 474-2911

Bernadette T. Clark, J.

This Labor Law case arises from a construction accident that occurred on November 10, 2020 when plaintiff Robert Emery (hereinafter "plaintiff"), an employee of the Town of Kirkland Highway Department, was working at a construction site along a creek in the Village of Clinton at which a retaining wall was being built. The retaining wall was being constructed by defendant John Spinella Excavation Company, Inc. (hereinafter "Spinella Excavating") under a verbal contract with defendant Village of Clinton (hereinafter "the Village"). Plaintiff was injured as he was attempting to insert a "pin" into the "thumb" of an excavator owned by Spinella Excavating and operated by John Spinella, Sr. (hereinafter "Spinella, Sr."). The pin was ejected from the excavator and struck plaintiff in the head, causing him injuries.
In their complaint, plaintiff and his wife, Lindsay Emery, who sues derivatively for loss of consortium (collectively, "plaintiffs"),[FN1]
assert causes of action for negligence and violations of Labor Law §§ 200, 240, and 241 (6). With respect to the Labor Law § 241 (6) cause of action, plaintiffs' complaint alleges violations of 12 NYCRR 23-9.2 (a) and 23-4.2 (k). In a subsequent supplemental bill of particulars, plaintiffs expanded their theories of Labor Law § 241 (6) liability to include alleged violations of 12 NYCRR 23-9.5 (a), (b), and (c).
All parties now move for summary judgment. Plaintiffs seek partial summary judgment on the issue of liability as against both defendants, and each of the defendants move for summary judgment seeking complete dismissal of plaintiffs' case.
 Papers Considered on the Motions [FN2]

The Village's motion (NYSCEF Motion #04) seeks dismissal of plaintiffs' complaint and Spinella Excavating's cross claim. The papers submitted by the Village on this motion are comprised of a notice of motion, the attorney affirmation of Gerard E. O'Connor, Esq., the memorandum of law of Attorney O'Connor, and the exhibits attached to Attorney O'Connor's affirmation (collectively, NYSCEF Doc. Nos. 96-107). Those exhibits include plaintiffs' notice of claim, plaintiffs' summons and complaint, the Village's answer, Spinella Excavating's answer, plaintiffs' bill of particulars and supplemental bill of particulars, plaintiff's Municipal Law § 50-h testimony, and the deposition transcripts of plaintiff, Spinella, Sr., and Robert Rockwell. In opposition to the Village's motion, plaintiffs offer the attorney affirmation of Lisa Solomon, Esq., an Inter-Municipal Shared Services Agreement included as an exhibit to that affirmation, and the memorandum of law of Attorney Solomon (collectively, NYSCEF Docs. 163-165). In [*2]reply and in further support of its motion, the Village offers the attorney affirmation of Gerard E. O'Connor, Esq. (NYSCEF Doc. No. 179).
Plaintiffs' motion for partial summary judgment on the issue of liability (NYSCEF Motion #05) is comprised of the following papers: a notice of motion, the attorney affirmation of Lisa Solomon, Esq., the memorandum of law of Attorney Solomon, the expert affirmation of John Coniglio (with exhibits), the expert affidavit of Brian O'Donel (with exhibits), and the exhibits attached to Attorney Solomon's affirmation (collectively, NYSCEF Doc. Nos. 109-140). Those exhibits include plaintiffs' notice of claim, the Village's answer, Spinella Excavating's answer, plaintiffs' bill of particulars and supplemental bill of particulars, plaintiffs' note of issue, plaintiff's Municipal Law § 50-h testimony, the written notes of Robert Rockwell, and the deposition transcripts of plaintiff, Spinella, Sr., Bernard Peck, Robert Rockwell, and John Spinella, Jr. (hereinafter "Spinella, Jr."). In opposition to plaintiffs' motion, the Village offered the attorney affirmation of Gerard E. O'Connor, Esq. (NYSCEF Doc. No. 170). For its opposition to plaintiffs' motion, Spinella Excavating submitted the attorney affirmation of Matthew P. Germain, Esq. and the expert affirmation of Martin R. Bruno (with exhibit) (collectively, NYSCEF Doc. Nos. 172-174). In reply and in further support of their motion, plaintiffs offered a memorandum of law from Lisa Solomon, Esq. (NYSCEF Doc. No. 177).
Spinella Excavating's motion (NYSCEF Motion #06) seeks dismissal of plaintiffs' complaint and the Village's cross claim. The papers Spinella Excavating submitted in support of its motion include a notice of motion, the attorney affirmation of Matthew P. Germain, Esq., the memorandum of law of Attorney Germain, and the exhibits attached to Attorney Germain's affirmation (collectively, NYSCEF Doc. Nos. 141-155). Those exhibits include plaintiffs' notice of claim, plaintiffs' summons and complaint, Spinella Excavating's answer, plaintiffs' bill of particulars and supplemental bill of particulars, plaintiffs' note of issue, plaintiff's Municipal Law § 50-h transcript, and the deposition transcripts of plaintiff, Robert Rockwell, Spinella, Sr., and Bernard Peck. In opposition, plaintiffs offer the attorney affirmation of Lisa Solomon, Esq. and an Inter-Municipal Shared Services Agreement included as an exhibit to that affirmation, as well as the memorandum of law of Attorney Solomon (collectively, NYSCEF Doc. Nos. 166-168). The Village opposed Spinella Excavating's motion through the attorney affirmation of Gerard E. O'Connor, Esq. (NYSCEF Doc. No. 171). In reply, Spinella Excavating provided the reply attorney affirmation of Matthew P. Germain, Esq. (NYSCEF Doc. No. 178).
The Court has carefully considered these motion papers and exhibits. The Court also has carefully considered the arguments of counsel, which were offered at the in-person return date for these motions on February 13, 2025.

Relevant Deposition Testimony

Robert Emery
Plaintiff, who testified at both a Municipal Law § 50-h examination and at examinations before trial, testified that he has worked as a motor equipment operator for the Town of Kirkland since 2003. On November 10, 2020, his supervisor at the Town advised him that he would be assisting on a project with the Village involving the construction of a retaining wall along a creek near the intersection of Beatty Avenue and Utica Street. Plaintiff's supervisor told plaintiff to bring a dump truck to the site and advised plaintiff that Spinella, Sr. would be providing plaintiff with instructions regarding what work to perform on site.
When plaintiff first arrived at the worksite, he and his Town of Kirkland coworker Bernard Peck spoke with Spinella, Sr. and Spinella, Jr. regarding how they would go about [*3]constructing the retaining wall. Plaintiff indicated that the Village's Superintendent of Public Works, Robert Rockwell, "was on site in and out throughout the day," but was not present when the accident occurred. At the time of the accident, the individuals on site included plaintiff, Peck, Spinella, Sr., and Spinella, Jr.
Plaintiff testified that while on site on November 10, 2020, he took direction from Spinella, Sr. regarding what tasks to perform. Plaintiff said that even though the job was for the Village, "the rule of thumb" is that the person in charge of the equipment "is in charge of the jobsite." Because Spinella, Sr. was operating the excavator, plaintiff characterized him as being "in charge" and as "running the show." According to plaintiff, Spinella directed what work he and the other on-site laborers were to perform and "was in control of the jobsite."
Plaintiff described the subject pin as being used to secure a "mechanical thumb" on the excavator arm in either an "up position" or "down position" relative to the bucket, depending on which position for the thumb was more appropriate for the specific task being performed. On the date in question, plaintiff had manually removed and replaced the pin somewhere between three and six times without issue, prior to the accident occurring. Plaintiff noted that he had worked with Spinella, Sr. on several prior jobs involving the same excavator and had removed and reinserted this exact pins on "dozens" of prior occasion without issue.
At the time of the accident, Spinella, Sr. was operating the excavator and asked plaintiff to put the thumb down, which required removal and reinsertion of the pin. Plaintiff explained that sometimes, when reinserting the pin, he would have to tell Spinella, Sr. to "either roll the bucket out or curl the bucket in," so that the holes through which the pin had to be inserted could be lined up. If plaintiff needed Spinella, Sr. to move the bucket to line up the holes, he typically would communicate that to Spinella, Sr., who then would "gently" move the bucket to try to align the holes. This method had worked numerous times on prior occasions. Plaintiff described the act of removing and reinserting the pin as a way of changing the functionality of the excavator.
Plaintiff testified that he removed the pin, that Spinella, Sr. then flipped the thumb to the down position, and that when plaintiff then went to reinsert the pin, it got jammed. Plaintiff said he told Spinella, Sr. to "roll the bucket out" to help line the holes up. According to plaintiff, Spinella, Sr. moved the arm of the excavator away from him, which caused his hand to come off the pin. At that point, Spinella, Sr. began to move the bucket. The pin then flew out and struck plaintiff in the forehead, just above his eye. At his deposition, plaintiff described the accident, from the point of the pin becoming jammed to the point of him being struck, as follows:
"I said, 'Brother, the pin is jammed. Just pull it out a little bit.' He's like, 'I got to re-adjust.' I said, 'You don't have to re-adjust. All you got to do is just roll the bucket out.' So without saying anything he just moves the boom away from me, not telling me what he's doing. So his moving the boom away from me, it took my hand off the pin.
So this is the thing. In the amount of time it's taking me to describe what happened, the pin had already popped out. It hit me in the head. That's how fast it was. As I got my arm up and my hand came off the pin, I'm just about to yell to him, 'The pins in there,' and he started moving the levers.
I could hear the hydraulics like grunting. The machine is revving. And then I heard the loud bang and the pin came out and hit me in the head. It happened in the blink of an eye."
Plaintiff stated that Spinella, Sr. should not have moved the excavator's arm away from him and that this action made the situation unsafe because it forced plaintiff's hand to come off the pin and did not allow plaintiff to get the pin through the holes as intended. Because he heard "the hydraulics grunting" and "the engine revving," plaintiff believed Spinella, Sr. was not trying to "gently" move the bucket a matter of just inches, as required, but instead was putting more force than necessary into that movement. Plaintiff testified that he believed Spinella, Sr.'s actions in this respect caused the pin to be "pinched" and created "a tremendous amount of pressure on that pin," which in turn caused the pin to fly out and strike him.

 John Spinella, Sr.
Spinella, Sr. testified that he has run Spinella Excavating for over 30 years and has been operating excavators for 48 years. He agreed that as the sole excavator operator at the worksite where plaintiff was injured, he was "responsible for the safety of the workers in and around the operation of that excavator." He described Rockwell, the Village's Superintendent of Public Works, as "the boss" on this project because Rockwell told Spinella, Sr. "what he wanted done." Spinella, Sr. conceded, however, that Rockwell's control was limited to the big picture of the project and to ensuring that Spinella, Sr. had the supplies needed to complete the project. Spinella, Sr. agreed that at the worksite, he directed what tasks were to be completed by the on-site laborers. Spinella, Sr. told plaintiff what work he was to do, including telling plaintiff when to remove and reinsert the pin for purposes of repositioning the excavator's thumb. Nobody from the Village told Spinella, Sr. how to build the retaining wall.
Spinella, Sr. explained that to secure the thumb, the pin must go through a series of holes and that sometimes, if the holes are not aligned, the operator of the excavator needs to move the bucket up or down to achieve that alignment. He stated that in such cases, even rolling the bucket gently will cause the engine to rev.
Spinella, Sr. stated that plaintiff asked him to roll the bucket so that the holes for the pin could be aligned. He disputed plaintiff's testimony that he had moved the arm of the excavator away from plaintiff prior to rolling the bucket; instead, Spinella, Sr. said that he asked plaintiff to step back from the arm after the pin got jammed, so that he could "wiggle the bucket." Spinella, Sr. said he did not move the joystick to roll the bucket until plaintiff had stepped back about ten feet. He recalled that when he operated the joystick to roll the bucket, he "heard a pop" that turned out to be the pin flying out and striking plaintiff. After hearing the "pop," Spinella, Sr. saw that plaintiff was on the ground. He never actually saw the pin fly out or strike plaintiff.
Spinella, Sr. did not believe that what he did by moving the joystick to roll the bucket would have put any pressure on the partially inserted pin, but he conceded that rolling the bucket to align the holes potentially could have had that effect. He confirmed that earlier that morning, both plaintiff and Spinella, Jr. had removed and reinserted the pin on a few occasions without incident. He also confirmed that plaintiff had done so on many prior occasions in the past, as well. Spinella, Sr. stated that he has continued to use the subject pin with his excavator since this accident without any problems. He has not noticed any damage to the pin, nor any damage to the holes into which it inserts, apart from standard wear and tear. Spinella, Sr. said that in his 48 years of operating excavators, he had never seen something like this happen.

 Bernard Peck
Bernard Peck, a heavy equipment operator with the Town of Kirkland, is a coworker of plaintiff who also worked on the retaining wall project on November 10, 2020. He was sent to the site by his supervisor and told to assist Spinella, Sr. with placing rocks for the retaining wall. [*4]Peck confirmed that he and plaintiff took direction about what work to do from Spinella, Sr. Peck recalled at least three occasions that morning when he saw plaintiff adjust the thumb pin on the excavator without issue. Peck was familiar with this process because he himself had done it on prior occasions on a similar excavator. He explained that to get the pin all the way through, three pieces of steel on the excavator need to be lined up.
At the time of the accident, Peck was driving a front loader on Beatty Avenue to bring stone around to the location where Spinella was digging. As he drove, he saw Spinella motion to plaintiff, saw plaintiff remove the pin, then saw Spinella lower the thumb by causing it to fall onto the bucket. Peck then saw plaintiff attempt to reinsert the pin, then take "a step back" and remove his hand from the pin. Mere seconds later, the pin flew out and struck plaintiff. Peck was about 60-70 feet away when he saw this happen; from that distance, he could not tell if the bucket was moving when the pin was ejected.
Based upon what he witnessed, as well as the fact that the hole on the excavator where the pin is inserted now is "oblong" as observed during an inspection of the excavator, Peck thought that the accident was caused by Spinella, Sr. "pressurizing the thumb." He could not say how much throttle Spinella, Sr. used at the time but testified that the "oblong shape" of the hole suggested that Spinella, Sr. put too much pressure on the thumb and the pin, causing the pin to be ejected.

 Robert Rockwell
In notes dated November 10, 2020, but typed up a few days after the accident, Robert Rockwell, the Village's Superintendent of Public Works, summarized his understanding of what transpired. He confirmed that he was not present at the time of the accident but learned of plaintiff's injury upon returning to the worksite. Rockwell's notes said: "I was told he was putting in pin to the thumb of machine to either lock or unlock cylinder and pin would not go in and Mr. Spinella asked Mr. Emery to step back while he touched button in machine to move cylinder to line up hole so pin would go in. That is when pin flew out and hit Mr. Emery." Rockwell could not recall who at the worksite had provided him this information.
Rockwell testified that in his capacity as Superintendent of Public Works for the Village, he drafted applications to the Department of Environmental Conservation to get approval for the retaining wall project. The Village then contracted with Spinella Excavating to perform the project. Rockwell said that Spinella, Sr. was in charge of on-site safety for the project. To help complete the project, the Village used Town of Kirkland employees, namely plaintiff and Peck.
Rockwell explained that Spinella, Sr. had the authority to tell plaintiff and Peck what work to perform and how to perform that work. Rockwell agreed, however, that despite Spinella, Sr. controlling the worksite, Rockwell could have "fired" Spinella, Sr. from the project, could have asked Town of Kirkland employees to leave the site, and could have cancelled the project at any point. He also agreed that Spinella, Sr. could have shut down the jobsite, cancelled the job, or asked certain workers to leave if he deemed that necessary. Rockwell believed that if he and Spinella, Sr. were both on-site and had differing views on how to proceed on any of these issues, Rockwell would have the final call; when Rockwell was not on-site, however, Spinella, Sr. had full decision-making authority.

 John Spinella, Jr.
John Spinella, Jr., the son of Spinella, Sr. and a civil engineer, assisted his father with the subject retaining wall project and was present when plaintiff was injured. Like plaintiff and Peck, Spinella, Jr. took directions from Spinella, Sr. regarding what work to perform and how to [*5]perform it. Spinella, Jr. could not recall whether Rockwell, when present on site, had given any instructions to him, plaintiff, or Peck. Spinella, Jr. did not witness the accident that injured plaintiff, but did recall finding plaintiff on the ground and providing him with medical care. Spinella, Jr. denied that the pin was damaged in any way. He called the incident "a freak accident."

Relevant Expert Evidence

 John Coniglio
In support of their motion, plaintiffs offer the opinions of John Coniglio, an expert in the field of "safety engineering." Coniglio examined the excavator, thumb, and pin and found no defects. He opines that Spinella, Sr.'s actions were negligent and caused plaintiff's injuries. On that score, his specific opinion is as follows:
"Spinella made a reckless and quick action movement of the bucket, which caused the pin to dislodge and shoot across an area now distant from Emery as the bucket was moved, striking him. The operator is responsible for all equipment operations and those who may be nearby. Before moving the bucket, Spinella should have stopped, explained his plan, and removed Emery from the area."
In addition to offering this opinion on plaintiffs' general negligence and Labor Law § 200 causes of action, Coniglio also opined that the following Industrial Code regulations were violated, as relevant to plaintiffs' Labor Law § 241 (6) cause of action: 12 NYCRR 23-9.2 (a) because plaintiff "serviced" the excavator when it was not at rest; 12 NYCRR 23-9.5 (c) because plaintiff was permitted to stand "within the range of the swing of the dipper bucket" despite being neither "the pitman" nor a member of the "excavating crew"; and 12 NYCRR 23-9.2 (b) (1) because Spinella, Sr. operated the excavator without having read the owner's manual.

Brian O'Donel
Plaintiffs' motion also is supported by an expert affidavit and report from Brian O'Donel, P.E., a mechanical engineer with over 30 years of experience in the field of equipment safety. O'Donel opines that plaintiff "was unreasonably and unnecessarily exposed to" being struck by the pin when Spinella, Sr. moved the excavator bucket with plaintiff nearby. He said that "Spinella failed to ensure that [plaintiff] was clear of the motion/action of the machine/excavator," and opined that both Spinella Excavating and the Village "failed to provide a safe work site for" plaintiff. Regarding causation, O'Donel opines that Spinella, Sr.'s act of moving the bucket with the pin partially inserted caused the pin "to be violently ejected under load." O'Donel explained his view of the physics that caused the pin to eject, and noted that Spinella, Sr. erred in "activat[ing] the excavator control (joystick) with the throttle control in automatic and elevated versus switching off the automatic function and attempting to feather the bucket movement at idle." According to O'Donel, Spinella, Sr. "should have switched to idle and slowly and gently aligned the pin hole with [plaintiff] out of harm's way." Regarding the Industrial Code, O'Donel cites 12 NYCRR 23-4.2 (k), 23-9.2 (a), 23-9.2 (b) (1), and 23-9.4 (b) (2) as having been violated.

 Martin Bruno
In opposition to plaintiffs' motion, defendant Spinella Excavating offers an expert affidavit from Martin Bruno, CHST, "a certified Environmental Health and Safety Director" with over 25 years of experience in "construction and worksite safety." Bruno's opinions, in short, aim to directly rebut those offered by Coniglio and O'Donel, plaintiffs' experts. He disputes the views of Coniglio and O'Donel that plaintiff removing and reinserting the pin [*6]constituted "servicing" the excavator and opines that as a result, 12 NYCRR 23-9.2 (a) is inapplicable. Likewise, Bruno asserts that because plaintiff was part of the "excavating crew," plaintiff is not protected by 12 NYCRR 23-9.5 (c). Finally, Bruno disputes that Spinella, Sr.'s actions constituted negligence or a violation of Labor Law § 200. As to this final point, Bruno notes that the way plaintiff and Spinella, Sr. were working together to change the pin to alter the use of the thumb was "standard procedure," and that there was no way to accomplish this task without plaintiff being near the excavator. Bruno opines that plaintiff's injuries resulted from a "freak occurrence," rather than by any conduct that constitutes negligence.

 Analysis
"Summary judgment is a drastic remedy and should not be granted where there is any doubt as to the existence of a triable issue" (Rotuba Extruders, Inc. v Ceppos, 46 NY2d 223, 231 [1978], quoting Moskowitz v Garlock, 23 AD2d 943, 944 [3d Dept 1965]). On summary judgment, courts are not at liberty to make credibility determinations or weigh evidence (see Vega v Restani Const. Corp, 18 NY3d 499, 505 [2012]), and the "facts must be viewed 'in the light most favorable to the non-moving party'" (id. at 503, quoting Ortiz v Varsity Holdings, LLC, 18 NY3d 335, 339 [2011]). Procedurally, the party seeking summary judgment bears the initial burden of making a prima facie showing of entitlement to judgment as a matter of law by tendering sufficient evidence, in admissible form, to demonstrate the absence of any material issues of fact; then, only after such a showing has been made, the burden shifts to the opposing party to show, by admissible evidence, the existence of a factual question necessitating a trial (see Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).

 Labor Law § 240
Plaintiffs neither seek summary judgment on their Labor Law § 240 cause of action nor make any attempt to defend against the defendants' respective motions seeking dismissal of that cause of action. In any event, both defendants established their entitlement to dismissal of this claim by submitting deposition testimony indicating that plaintiff was on level ground and that the pin flew laterally toward him, starting at eye level and ultimately striking him just above his right eye. On these facts, plaintiff's injury did not result from an "elevation-related hazard" of the sort covered by Labor Law § 240 (see Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 500 [1993]; Rocovich v Consolidated Edison Co., 78 NY2d 509, 514 [1991]). Plaintiff neither fell from elevation nor was struck by an object that came from above. Moreover, defendants showed that the pin that struck plaintiff moved laterally toward him without any meaningful height change, which precludes Labor Law § 240 liability (see Narducci v Manhasset Bay Assoc., 96 NY2d 259, 270 [2001] [a "de minimis elevation differential" between a plaintiff and the object with which he was struck is insufficient]; Kuhn v Giovanniello, 145 AD3d 1457, 1458 [4th Dept 2016] [same]). Inasmuch as plaintiffs did not oppose this aspect of the defendants' respective motions, they did not raise a question of fact necessitating a trial. Accordingly, the motions of defendants Village of Clinton and Spinella Excavating are granted to the extent they seek dismissal of plaintiffs' Labor Law § 240 cause of action.

Labor Law § 241 (6)
"Labor Law § 241 (6) requires owners and contractors to 'provide reasonable and adequate protection and safety' for workers and to comply with the specific safety rules and regulations promulgated by the Commissioner of Labor" (Schwab v A.J. Martini, Inc., 288 AD2d 654, 656 [3d Dept 2001], quoting Labor Law § 241 [6]). To support a claim for liability under Labor Law § 241 (6), a plaintiff must allege violations of "concrete specifications imposing a [*7]duty on defendant," and violations of mere "general safety standards of the Industrial Code" will not suffice (Comes v New York State Elec. & Gas Corp., 82 NY2d 876, 878 [1993]; see Ross, 81 NY2d at 505). The regulations upon which a plaintiff relies must do more than merely reiterate common law standards of care (see Rizzuto v L.A. Wenger Contr. Co., 91 NY2d 343, 349 [1998], citing Ross, 81 NY2d at 504; accord Misicki v Caradonna, 12 NY3d 511, 515 [2009]). For a claim under Labor Law § 241 (6), a plaintiff "need not show that defendants exercised supervision or control over his worksite" (Ross, 81 NY2d at 502). If a regulation relied upon by a plaintiff in support of a Labor Law § 241 (6) claim is factually inapplicable, a defendant will be entitled to summary judgment on that claim (see Marino v Manning Squires Hennig Co., Inc., 208 AD3d 1020, 1021 [4th Dept 2022]; Lawyer v Hoffman, 275 AD2d 541, 542 [3d Dept 2000]).
Although plaintiffs, through their complaint, bill of particulars, and supplemental bill of particulars, alleged violations of five specific regulations of the New York Industrial Code (Title 12, Subchapter A of the New York Codes, Rules, and Regulations), plaintiffs' motion papers and the concessions of plaintiffs' counsel at oral argument have since narrowed the theories upon which plaintiffs rely to two specific regulations: 12 NYCRR 23-9.2 (a) and 12 NYCRR 23-9.5 (c). Thus, to the extent plaintiffs' Labor Law § 241 (6) cause of action previously was premised upon theories of liability arising under 12 NYCRR 23-4.2 (k), 12 NYCRR 23-9.5 (a), and 12 NYCRR 23-9.5 (b), the Court grants defendants' respective motions and dismisses those specific Labor Law § 241 (6) theories as abandoned (see Perez v Folio House, Inc., 123 AD3d 519, 520 [1st Dept 2014] ["As to the remaining Industrial Code regulations on which plaintiff predicates his § 241 (6) claim, his failure to address them" in opposition to defendants' summary judgment motion "indicates that he has abandoned them as bases for liability"]).[FN3]

 Is the Village an "Owner"?
Before turning to the regulations upon which plaintiffs premise their Labor Law § 241 (6) cause of action, a preliminary issue is whether Labor Law § 241 even applies to defendant Village of Clinton. By its terms, Labor Law § 241, including Labor Law § 241 (6), imposes requirements on only "contractors and owners and their agents." The Village is not a contractor here, so the question is whether it qualifies as an "owner" within the meaning of Labor Law § 241.
"Courts have held that the term 'owner,'" for purposes of Labor Law § 241, "is not limited to the titleholder of the property where the accident occurred and encompasses a person 'who has an interest in the property and who fulfilled the role of owner by contracting to have work performed for his [or her] benefit'" (Scaparo v Vill. Of Ilion, 13 NY3d 864, 866 [2009], quoting Copertino v Ward, 100 AD2d 565, 566 [2d Dept 1984]). An owner "'is the party who, as a practical matter, has the right to hire or fire subcontractors and to insist that proper safety practices are followed'" (Thompson v M & M Forwarding of Buffalo, NY, Inc., 174 AD3d 1433, 1434 [4th Dept 2019], quoting Guryev v Tomchinsky, 87 AD3d 612, 614 [2d Dept 2011], affd 20 NY3d 194 [2012]). In "'determining whether a non-titleholder is an owner, . . . it is the right to [*8]control the work that is significant, not the actual exercise or nonexercise of control'" (Thompson, 174 AD3d at 1434, quoting Ryba v Almeida, 27 AD3d 718, 719 [2d Dept 2006]).
Some of these factors, including the fact that the Village contracted to have Spinella Excavating build the retaining wall at a portion of the creek that runs through the Village, as well as the fact that Rockwell acknowledged his authority to fire Spinella Excavating and order workers to leave the site, support the notion that the Village can be considered an "owner" for purposes of Labor Law § 241. Other factors, however, support a conclusion that the Village was not an "owner"; these include the unanimous testimony that Spinella, Sr. was the one responsible for on-site safety, the testimony that Spinella, Sr. had "the right to control the work" (Thompson, 174 AD3d at 1444, quoting Ryba, 27 AD3d at 719), and the possibility that the Village seems to have contracted to have this work done for the benefit of the abutting landowner (i.e., Clinton Pottery), not for the Village's own benefit (see Scaparo, 13 NY3d at 866).
Ultimately, though, the Court need not resolve this issue because it concludes, as outlined below, that the regulations relied upon by plaintiffs do not, on these facts, support Labor Law § 241 (6) liability. In other words, even giving plaintiffs the benefit of the doubt and assuming, for the sake of argument, that the Village is an "owner" for purposes of Labor Law § 241, the Village nevertheless is entitled to summary judgment on both of plaintiffs' remaining Labor Law § 241 (6) theories of regulatory liability.

12 NYCRR 23-9.2 (a)
12 NYCRR 23-9.2 (a) is part of a section entitled "General requirements," which in turn falls within the portion of the Industrial Code entitled "Power-Operated Equipment" (Subpart 23-9). Specifically, this provision states:
"Maintenance. All power-operated equipment shall be maintained in good repair and in proper operating condition at all times. Sufficient inspections of adequate frequency shall be made of such equipment to insure such maintenance. Upon discovery, any structural defect or unsafe condition in such equipment shall be corrected by necessary repairs or replacement. The servicing and repair of such equipment shall be performed by or under the supervision of designated persons. Any servicing or repairing of such equipment shall be performed only while such equipment is at rest" (emphasis added).
Plaintiffs submit that their claim under 12 NYCRR 23-9.2 (a), for Labor Law § 241 (6) purposes, arises under the final sentence of this provision, which requires that any "servicing or repairing" of power-operated equipment be done only while such "equipment is at rest."
In Misicki v Caradonna (12 NY3d 511 [2009]), the Court of Appeals ruled that the first two sentences of 12 NYCRR 23-9.2 (a) "are not specific enough to permit recovery" under Labor Law § 241 (6), but that the third sentence, which requires the repair of "any structural defect or unsafe condition" upon such defect or condition being discovered, can provide a basis for Labor Law § 241 (6) liability (id. at 520-521). Likewise, courts have ruled that the final sentence of this regulation—the sentence upon which plaintiffs rely—is specific enough to provide a potential basis for Labor Law § 241 (6) liability (see Golec v Dock Street Constr., LLC, 186 AD3d 463, 465 [2d Dept 2020]; Shields v First Ave. Builders LLC, 118 AD3d 588, 589 [1st Dept 2014]).
The Court of Appeals and Appellate Division, Fourth Department each have stated that to recover under Labor Law § 241 (6) for a violation of 12 NYCRR 23-9.2 (a), the defendant must have "actual notice of the structural defect or unsafe condition" (Misicki, 12 NY3d at 521; Marino, 208 AD3d at 1021). The defendants argue that this rule applies to the entirety of 12 [*9]NYCRR 23-9.2 (a). Plaintiffs, by contrast, argue that it applies only to the third sentence of the regulation (i.e., "Upon discovery, any structural defect or unsafe condition in such equipment shall be corrected by necessary repairs or replacement"), not to the final sentence of the regulation upon which they are relying (i.e., "Any servicing or repairing of such equipment shall be performed only while such equipment is at rest").
In what appears to be an issue of first impression, the Court agrees with plaintiffs that the "actual notice" rule of Misicki, Marino, and similar cases (see e.g. Shaw v Scepter, Inc., 187 AD3d 1662, 1665 [4th Dept 2020]; Salerno v Diocese of Buffalo, 161 AD3d 1522, 1523 [4th Dept 2018]) applies only to cases arising under the third sentence of 12 NYCRR 23-9.2 (a). This conclusion follows from the fact that only the third sentence of that regulation pertains to a "structural defect or unsafe condition" about which a defendant could have potential notice, as well as from the fact that this sentence contains the prefatory phrase "[u]pon discovery"—a phrase missing from the other sentences of the regulation.
Misicki, in first recognizing this "actual notice" requirement, quoted only from the third sentence of 12 NYCRR 23-9.2 (a), and had no occasion to consider whether the notice requirement extended to the final sentence of that regulation (see 12 NY3d at 520 ["the parties focused on the regulation's first three sentences"]). Likewise, cases citing the Misicki notice requirement all have involved alleged defects or unsafe conditions; none have been cases involving "servicing or repairing" equipment that was not at rest (see e.g. Marino, 208 AD3d at 1021 [issue was whether there were any prior instances of the parking brake on a forklift malfunctioning]; Shaw, 187 AD3d at 1665 [issue was whether a "man lift" that plaintiff was unloading from a flatbed truck was defective and whether there was notice of that defect]; Salerno, 161 AD3d at 1523 [finding that there were "triable issues of fact whether plaintiff's employer had actual notice of a structural defect or unsafe condition regarding the safety bar" in a skid-loader]). When viewed in this context, the Court finds that the "actual notice" rule does not apply to the final sentence of 12 NYCRR 23-9.2 (a), the sentence upon which plaintiffs rely in this case.
Turning to the merits of the parties' respective motions as to plaintiffs' claim under the final sentence of 12 NYCRR 23-9.2 (a), there is no dispute that the excavator was not "at rest" when plaintiff removed and attempted to reinsert the pin. Plaintiffs concede that this act cannot be considered "repairing" the excavator, instead arguing that plaintiff was "servicing" the excavator. The defendants dispute this point, arguing that this act did not constitute "servicing." Whether plaintiff's conduct in removing and attempting to reinsert the pin amounts to "servicing" within the meaning of 12 NYCRR 23-9.2 (a), therefore, is a disputed point on all three motions.
Unfortunately, neither "service" nor "servicing" are defined in the Industrial Code, whether in 12 NYCRR 23-9.2 itself or in the Industrial Code's general definition section (see 12 NYCRR 23-1.4). Nor does it appear that these terms have been defined in the case law. Once again, this Court faces an issue of apparent first impression: how to define and interpret the term "servicing" for purposes of 12 NYCRR 23-9.2 (a).
If a term is not defined and is a "word[] of ordinary import," a court should interpret the term "in a manner consistent with" its "'usual and commonly understood meaning'" (Civil Serv. Empl. Assn., Inc., Local 1000 v Olympic Regional Dev. Auth., 163 AD3d 1110, 1112 [3d Dept 2018], quoting Yaniveth R. v LTD Realty Co., 27 NY3d 186, 192 [2016]). Courts look to dictionary definitions as "useful guideposts in determining the meaning of" an undefined "word [*10]or phrase" in a statute or regulation (Nadkos, Inc v Preferred Contractors Ins. Co. Risk Retention Group LLC, 34 NY3d 1, 7 [2019]; see People v Aleynikov, 31 NY3d 383, 397 [2018]). Importantly, the Fourth Department has held, in the context of Labor Law § 241 (6) summary judgment motions, that the interpretation of an undefined term in the Industrial Code—including whether it applies to the case's specific facts—"is a question of law for the court to resolve" (Millard v City of Ogdensburg, 274 AD2d 953, 954 [4th Dept 2000]). Thus, the proper interpretation of the term "servicing" under 12 NYCRR 23-9.2 (a) is a question of law, not a question of fact, and this Court will consult dictionary definitions to ascertain that term's "commonly understood meaning."
The Merriam-Webster online dictionary defines the verb "service" as "to repair or provide maintenance for." Similarly, the online Oxford English Dictionary defines the verb "service" as "to perform typically routine maintenance or repair work on a vehicle, machine, appliance, etc.," and the online version of the Cambridge Dictionary defines the verb "service" as "to examine a machine and repair any parts that are not working." These definitions all suggest that "servicing" is synonymous with maintaining or repairing a vehicle or machine, not with merely pivoting or moving parts on such vehicle or machine.
For added context, the Merriam-Webster online dictionary defines the verb "repair" as "to restore by replacing a part or putting together what is torn or broken," and the Oxford English Dictionary defines "repair" as "to restore a damaged, worn, or faulty object or structure to good or proper condition by replacing or fixing parts." Regarding the verb "maintain," the Merriam-Webster online dictionary defines it to include keeping something in its "existing state . . . of repair" and acting to "preserve" an item "from failure or decline," and the Cambridge Online Dictionary defines it as acting "to keep a road, machine, building, etc. in good condition."
Considering the testimony in this case by reference to this commonly understood meaning of the term "servicing," the Court concludes as a matter of law that the activity plaintiff was engaged in at the time of his injury did not constitute "servicing" the excavator within the meaning of 12 NYCRR 23-9.2 (a). Plaintiff was attempting to reinsert the pin so that he could reposition the thumb on the excavator, which was a change in the excavator's function and operation but was not, in the commonly understood sense, a "repair" of the excavator or a means of "maintaining" it. As plaintiffs already have conceded, the act of removing and reinserting the pin to reorient the thumb was not a form of "repair." This concession, which is sensible under the facts, is crucial given that the above-referenced dictionary definitions treat the terms "repair" and "service" as synonymous. Tellingly, there was no testimony that moving the pin was necessary to fix the excavator, keep it in its current state of repair, or prevent it from falling into disrepair. Instead, removing and reinserting the pin was simply a means of changing the excavator's functionality. In short, the task in which plaintiff was engaged at the time of his injury did not constitute "servicing," within the common meaning of that term, for purposes of 12 NYCRR 23-9.2 (a).
The Court acknowledges plaintiff's testimony that in his personal view, his work to reorient the pin constituted "servicing." The Court also acknowledges that there are conflicting expert opinions on whether plaintiff's work with the pin constituted "servicing," with plaintiffs' two experts (Coniglio and O'Donel) saying it does and Spinella Excavating's expert (Bruno) saying it does not. Ultimately, the Court concludes that these disputes in the evidence cannot override this Court's legal conclusion regarding how to interpret and apply 12 NYCRR 23-9.2 [*11](a)'s use of the term "servicing" (see Millard, 274 AD at 954 [how to interpret an undefined term in the Industrial Code "is a question of law for the court to resolve"]).
Based upon the foregoing, the Court finds, as a matter of law, that 22 NYCRR 23-9.2 (a) is inapplicable to the factual circumstances of this case. Accordingly, the Court grants summary judgment to both defendants on this Labor Law § 241 (6) theory of liability and denies plaintiff's motion seeking partial summary judgment under this theory (see generally Lawyer, 275 AD2d at 542 [if a regulation is factually inapplicable, a defendant will be entitled to summary judgment on any Labor Law claims premised upon such regulation]).

12 NYCRR 23-9.5 (c)
The other regulation plaintiffs cite in support of their Labor Law § 241 (6) cause of action is 12 NYCRR 23-9.5 (c). Contained within a section entitled "Excavating machines," this provision reads as follows:
"Operation. Excavating machines shall be operated only by designated persons. No person except the operating crew shall be permitted on an excavating machine while it is in motion or operation. No person other than the pitman and excavating crew shall be permitted to stand within range of the back of a power shovel or within range of the swing of the dipper bucket while the shovel is in operation. When an excavating machine is not in use, the blade or dipper bucket shall rest on the ground or grade. The operator of an excavating machine shall not leave the controls of such machine at any time when the master clutch is engaged and the engine is operating. Oiling and greasing shall be performed only while an excavating machine is at rest and the master clutch disengaged. The boom or the bucket, dipper or clamshell of a power shovel shall not pass over the seat or cab of a truck or other vehicle while any person is in such seat or cab" (emphasis added).
Plaintiffs purport to rely upon the third sentence of this provision, which prohibits anyone other than "the pitman and excavating crew" from being "within range of the swing of the dipper bucket" as the excavator is being operated.
12 NYCRR 23-9.5 (c) "sets forth a specific, rather than general, safety standard, and is sufficient to support a Labor Law § 241 (6) cause of action" (Cunha v Crossroads II, 131 AD3d 440, 441-442 [2d Dept 2015]; accord Webber v City of Dunkirk, 226 AD2d 1050, 1051 [4th Dept 1996]). If the task in which the plaintiff was engaged "was an integral part of the excavation operation," then the plaintiff will be deemed a member of the "excavating crew" who is permitted to be within the range of the swing of the bucket for purposes of 12 NYCRR 23-9.5 (c) (Mingle v Barone Dev. Corp., 283 AD2d 1028, 1028 [4th Dept 2001]). Here, the parties dispute whether plaintiff was a member of the "excavating crew," with both defendants insisting that he was while plaintiff insists that he was not.
In support of their respective motions, both defendants established that plaintiff's task of removing and reinserting the pin "was an integral part of the excavating operation." The witnesses agreed that the repositioning of the thumb—which was done by removing and reinserting the pin— was a necessary component of using the excavator to build the retaining wall because the excavator needed to be able to toggle between both modes (i.e., thumb up and thumb down) interchangeably. Specifically, the excavator needed to be able to both: (1) scoop dirt away with the thumb up, then put that dirt into the waiting dump truck, and (2) grab rocks with the thumb down and place them to construct the wall. Both functions were "integral" to completing this project, so plaintiff's task of helping Spinella, Sr. to reorient the thumb according [*12]to need likewise was an "an integral part of the excavation operation" (Mingle, 283 AD2d at 1028). As a result, defendants established that plaintiff was part of the "excavating crew," within the meaning of 12 NYCRR 23-9.5 (c), when he assisted in moving the pin to reorient the thumb. That means it was not a violation of the Industrial Code for him to be within the reach of the bucket's range.
In response to this showing by both defendants, plaintiffs have not raised a triable question of fact with respect to plaintiff's status as part of the "excavating crew." Although Coniglio opined that 12 NYCRR 23-9.5 (c) was violated because plaintiff was within the range of the swing of the bucket despite not being part of the "excavating crew," Coniglio's explanation for why he believes plaintiff was not a part of that crew is unrelated to the applicable "integral part of the excavating operation" standard. Specifically, Coniglio premises this conclusion on the fact that plaintiff's "role was truck driver, laborer, doing general support duties for the project under Spinella's direction," and the fact that plaintiff "was just assisting under Spinella's direction." This explanation looks at plaintiff's role on the project too broadly, and never addresses why the specific task plaintiff was performing when he was injured—that is, removing and reinserting the pin to reposition the thumb for Spinella, Sr.—was not "an integral part of the excavating operation." Because Coniglio's expert affirmation on the issue relies upon factors that do not speak to the applicable standard for determining whether a laborer is part of an "excavating crew," plaintiffs have not rebutted the defendants' showing of entitlement to judgment as a matter of law on the 12 NYCRR 23-9.5 (c) portion of plaintiffs' Labor Law § 241 (6) cause of action.
For the same reason, plaintiffs have not established their entitlement to summary judgment as to their 12 NYCRR 23-9.5 (c) theory of liability. The Court finds that plaintiffs failed to make a prima facie showing that plaintiff Emery was not part of the "excavating crew"; thus, plaintiffs did not establish that Emery being within the reach of the swing of the bucket was a violation of 12 NYCRR 23-9.5 (c). The Court further finds that even if plaintiffs did make such a prima facie showing, both defendants raised questions of fact as to whether plaintiff's role was "integral" to "the excavating operation," such that his location near the bucket was permissible. Accordingly, this Court denies the component of plaintiffs' motion which seeks summary judgment on the 12 NYCRR 23-9.5 (c) portion of their Labor Law § 241 (6) cause of action.

Labor Law § 200 / General Negligence
Labor Law § 200 "is a codification of the common-law duty imposed upon an owner or general contractor to provide construction site workers with a safe place to work" (Comes v New York State Elec. & Gas Corp., 82 NY2d 876, 877 [1993]). Because Labor Law § 200 and common law negligence are conterminous, "New York courts analyze common law claims alleging an unsafe workplace under the same framework as Section 200 claims" (Wallace v Natl. R.R. Passenger Corp., 5 F Supp 3d 452, 466 [SDNY 2014]). "Cases involving section 200 and common-law negligence 'fall into two broad categories: namely, those where workers are injured as a result of dangerous or defective premises conditions at a work site, and those involving the manner in which the work is performed' (Wolf v Ledcor Constr., Inc., 175 AD3d 927, 930 [4th Dept 2019, quoting Mayer v Conrad, 122 AD3d 1366, 1367 [4th Dept 2014]; accord Poulin v Ultimate Homes, Inc., 166 AD3d 667, 670 [2d Dept 2018]). Plaintiffs have said their claim arises under the second of these categories ("the manner in which the work is performed").
"An implicit precondition to th[e] duty" imposed by Labor Law § 200 "'is that the party charged with that responsibility have the authority to control the activity bringing about the [*13]injury'" (Comes, 82 NY2d at 877, quoting Russin v Picciano & Son, 54 NY2d 311, 317 [1981]). In other words, "[w]here the alleged defect or dangerous condition arises from the contractor's methods and the owner exercises no supervisory control over the operation, no liability attaches to the owner under the common law or under Labor Law § 200" (id.).
Accordingly, where a plaintiff's injury stemmed from an activity over which a defendant did not "exercise[] supervisory control or ha[ve] any input into how" the activity was to be done, that defendant cannot be held liable under Labor Law § 200 (id.; see Jones v County of Erie, 121 AD3d 1562, 1563 [4th Dept 2014] [emphasizing this requirement]). If a defendant "monitored plaintiff's work on the day in question" and was there to make sure "that plaintiff completed his work," but did not "control the manner and method of plaintiff's work," that defendant cannot be liable under Labor Law § 200 (Jones, 121 AD3d at 1563). Merely giving "general instructions as to what needed to be done, as opposed to how to do it" is insufficient to give rise to liability under this section (O'Sullivan v IDI Constr. Co., Inc., 28 AD3d 225, 226 [4th Dept 2006]; see Gambee v Dunford, 270 AD2d 809, 810 [4th Dept 2000] ["There is no direction or control if the owner informs the worker what work should be performed, but there is direction and control if the owner specifies how that work should be performed"]).

 Village of Clinton's Motion
On its motion, the Village made a prima facie showing that it did not control how plaintiff was to perform the task that caused his injury, i.e., the task of removing and reinserting the pin for the thumb. The testimony was consistent that the Village, through Rockwell, did nothing more than set forth the general project the Village wanted completed, then left to its contractor, Spinella Excavating, how to carry out that project. All testifying witnesses agreed that at the site, Spinella, Sr.—not anyone associated with the Village—directed what work was to be performed by the on-site workers. Moreover, both Spinella, Sr. and plaintiff agreed that plaintiff was changing the pin at the time of his injury because Spinella had told him to do so. Plainly, the Village was not involved in dictating how plaintiff was to perform his work on the project.
Under these circumstances, the Village has conclusively established that it did not control plaintiff's work with respect to inserting the pin into the excavator. Here, as in Jones, Rockwell's role was simply to check in periodically and make sure the project was progressing, but he did not "control the manner and method of plaintiff's work" (Jones, 121 AD3d at 1563). At most, Rockwell provided a general overview of the work to be done; he did not, however, tell plaintiff how to accomplish that work. By all accounts, the how of the project was dictated by Spinella, Sr. (see O'Sullivan, 28 AD3d at 226; Gambee, 270 AD2d at 810). The Village's general oversight of the project and broader "supervisory role"—which is all the facts here illustrate—is not enough to make the Village liable under Labor Law § 200 or for common law negligence (see Poulin v Ultimate Homes, Inc., 166 AD3d 667, 673 [2d Dept 2018]; Schwab v A.J. Martini, Inc., 288 AD2d 654, 657 [3d Dept 2001]). Inasmuch as plaintiffs rely upon the same deposition testimony as the Village and neither of plaintiffs' experts opine that the Village controlled plaintiff Emery's work for purposes of the negligence and Labor Law § 200 causes of action,[FN4]
[*14]plaintiffs have not raised a question of fact in opposition to the Village's showing. Accordingly, the Village is entitled to dismissal of plaintiff's Labor Law § 200 and common law negligence causes of action.

Spinella Excavating's Motion
Spinella Excavating, on its motion, failed to eliminate questions of fact regarding whether Spinella, Sr. controlled the activity giving rise to plaintiff's injury (i.e., the removal and reinsertion of the pin to adjust the thumb). It is undisputed that plaintiff removed and was attempting to reinsert the pin because Spinella, Sr. asked him to do so. The witnesses also agreed that on site, Spinella, Sr. was the one directing the tasks to be performed by each of the on-site workers. On the other hand, as Spinella Excavating argues, it was plaintiff who, as part of the process of getting the pin inserted, told Spinella, Sr. to "roll the bucket" on the excavator to attempt to align the holes. Given this testimony, there are questions of fact regarding whether Spinella, Sr. exercised supervisory control over plaintiff's work with the pin (Comes, 82 NY2d at 877), controlled the "manner and method of plaintiff's work" with the pin (Jones, 121 AD3d at 1563), and/or specified for plaintiff "how that work should be performed" (Gambee, 270 AD2d at 810). In other words, Spinella Excavating failed to definitively prove, for summary judgment purposes, that Spinella, Sr. did not owe a duty of care to plaintiff for common law negligence and Labor Law § 200 purposes.
Nor did Spinella Excavating, on its motion, eliminate questions of fact regarding whether Spinella, Sr. breached his duty to plaintiff. Spinella Excavating included with its motion the deposition testimony of both plaintiff and Peck, testimony that raises the question of whether Spinella, Sr.'s actions made the task of reinserting the pin unsafe. Specifically, plaintiff said that Spinella, Sr. moved the arm of the excavator away from him, which caused plaintiff's hand to come off the pin. Additionally, both plaintiff and Peck testified that it seemed that Spinella, Sr. was using more engine power and torque than needed to try to align the holes, and they both thought this may have been what caused the pin to be ejected. Although Spinella, Sr. did not believe that he put excess pressure on the pin when he moved the bucket, he conceded that it was possible his movement of the bucket could have had such an effect. Collectively, these statements raise a triable question of fact regarding whether Spinella, Sr. was negligent by making the task he assigned to plaintiff—inserting the pin—more dangerous than necessary.
Alternatively, even if this Court were to find that Spinella Excavating made a prima facie showing in support of summary judgment, the Court would find that plaintiffs successfully have raised questions of fact in opposition. Plaintiffs' experts each offered opinions, grounded in the deposition testimony, regarding how Spinella, Sr.'s actions in moving the arm away from plaintiff and placing unnecessarily high pressure on the point where the pin was jammed constituted negligence and placed plaintiff at a high risk of harm. As a result, the Court denies the portion of Spinella Excavating's summary judgment motion which seeks dismissal of plaintiffs' Labor Law § 200 and negligence causes of action.
The Court's conclusion—that Spinella Excavating is not entitled to summary judgment because questions of fact exist regarding Spinella, Sr.'s control over plaintiff's injury-causing work and Spinella, Sr.'s potential breach of his duty to plaintiff, is consistent with the [*15]concessions made by Spinella Excavating's counsel at oral argument. At oral argument, counsel stated that there are questions of fact on the Labor Law § 200 and general negligence claims and described this as "a negligence case." As set forth above, this Court agrees.

Plaintiffs' Motion
For the reasons outlined above in relation to the Village's motion, plaintiffs have not shown that they are entitled to summary judgment on the issue of the Village's liability under Labor Law § 200. To the contrary, the Village has shown that it cannot be liable under this theory because it did not direct or control the manner of plaintiff's work related to the insertion of the subject pin. The fact that the Village did not control the manner of plaintiff's work in this respect is evident from the deposition testimony plaintiffs submitted with their motion; therefore, plaintiffs did not prove their entitlement to summary judgment with respect to the Village's liability on the Labor Law § 200 and common law negligence claims.
Regarding Spinella Excavating, plaintiffs failed to make an initial showing that Spinella, Sr. controlled the way plaintiff carried out the task of removing and reinserting the pin. As outlined above, the deposition testimony of the various witnesses reflected that Spinella, Sr. oversaw all the workers on site, directed what each worker was to do on site, and was the one who told plaintiff to remove and reinsert the pin so that the thumb could be repositioned. At the same time, however, the depositions included testimony that plaintiff was directing Spinella, Sr. regarding how to move the bucket to align the holes for the pin. By offering this competing testimony as part of its motion papers, plaintiffs failed to conclusively establish that Spinella Excavating owed a duty of care to plaintiff for Labor Law § 200 and general negligence purposes.
With respect to both defendants, therefore, the Court denies plaintiffs' motion for summary judgment on their Labor Law § 200 and common law negligence claims.

Defendants' Cross Claims
Both defendants have pleaded cross claims against each other sounding in common law indemnification and contribution. Based upon the Court's findings, plaintiffs' complaint is being dismissed in its entirety with respect to defendant Village of Clinton. At oral argument, counsel for the Village stated that if the Village were to be granted summary judgment in full, the Village's cross claims "naturally" would extinguish. Accordingly, the Court dismisses the Village's cross claims against Spinella Excavating.
Unlike the Village, defendant Spinella Excavating remains subject to potential liability to the extent that this Court has ruled that plaintiffs' Labor Law § 200 and common law negligence causes of action against Spinella Excavating survive summary judgment. Although this Court has ruled that the Village is not liable to plaintiffs, that does not necessarily insulate the Village from liability in indemnification or contribution to Spinella Excavating (see Raquet v Braun, 90 NY2d 177, 182-183 [1997]). To prove its entitlement to contribution or indemnification under these circumstances, however, Spinella Excavating would need to show that the Village breached a duty it owed to Spinella Excavating, and that such a breach by the Village "'had a part in causing or augmenting the injury for which contribution is sought'" (id. at 183, quoting Nassau Roofing & Sheet Metal Co. v Facilities Dev. Corp., 71 NY2d 599, 603 [1988]).
Here, the evidence the Village submitted in connection with its motion established that it did not owe any duty to codefendant Spinella Excavating related to the portion of the work that caused plaintiff's injury. The Village further established that even if it owed such a duty to Spinella Excavating, nothing it or its employees did on November 10, 2020 could have [*16]constituted a breach of such a duty. Finally, even assuming the Village had a duty to Spinella Excavating and that it breached that duty, the Village has shown that any such breach played no "part in causing or augmenting the injury" to plaintiff (Raquet, 90 NY2d at 183). Spinella Excavating, whose papers were silent with respect to its basis for opposing dismissal of this cross claim and contained much of the same evidence, failed to raise a question of fact necessitating a trial on its cross claim. As such, the Village is entitled to dismissal of Spinella Excavating's cross claim.

Conclusion
For the reasons set forth above, this case will proceed to trial on plaintiffs' Labor Law § 200 and common law negligence claims against Spinella Excavating, but all other causes of action, including all causes of action against the Village of Clinton, are dismissed. Plaintiffs' motion for partial summary judgment on the issue of liability is denied in its entirety, and the defendants' cross claims against one another are dismissed.
Now, therefore, in accordance with the above, it is hereby
ORDERED that the summary judgment motion of defendant Village of Clinton (NYSCEF Motion #04) is GRANTED in its entirety; and it is further
ORDERED that plaintiffs' complaint is DISMISSED as against defendant Village of Clinton; and it is further
ORDERED that defendant John Spinella Excavation Company, Inc.'s cross claim against defendant Village of Clinton is DISMISSED; and it is further
ORDERED that the motion of plaintiffs for partial summary judgment on the issue of liability (NYSCEF Motion #05) is DENIED in its entirety; and it further
ORDERED that the summary judgment motion of defendant John Spinella Excavation Company, Inc. (NYSCEF Motion # 06) is GRANTED to the extent that it seeks dismissal of plaintiffs' Labor Law §§ 240 and 241 (6) causes of action, as well as dismissal of defendant Village of Clinton's cross claims against it, but is otherwise DENIED; and it is further
ORDERED that plaintiffs' Labor Law §§ 240 and 241 (6) causes of action are DISMISSED as against defendant John Spinella Excavation Company, Inc.; and it is further
ORDERED that defendant Village of Clinton's cross claims against defendant John Spinella Excavation Company, Inc. are DISMISSED.
This shall constitute the Decision and Order. The original Decision and Order is returned to the attorney for the plaintiff. All other papers are being delivered by the Court to the County Clerk for filing. The signing of this Decision and Order does not constitute entry or filing under CPLR 2220. Counsel is not relieved from the applicable provisions of that rule with respect to filing, entry, and notice of entry.
ENTER:
Dated: March 3, 2025
Utica, New York
Hon. Bernadette T. Clark, J.S.C.

Footnotes

Footnote 1: Although Lindsay Emery is also a plaintiff, the Court will use the singular term "plaintiff" throughout this decision to refer to Robert Emery, the primary plaintiff and the individual upon whose claims Lindsay Emery's cause of action is based.

Footnote 2: Given that all three parties brought motions and were relying upon many of the same exhibits and deposition transcripts, plaintiff's counsel inquired about the need to file repeat motion exhibits. In response to that inquiry, the Court issued a Court Notice on January 6, 2025, advising counsel that they did not need to refile duplicative motion exhibits, so long as references to such previously filed exhibits were clearly delineated in their respective motion papers (NYSCEF Doc. No. 162).

Footnote 3: Plaintiffs' decision to abandon these claims is sensible. 12 NYCRR 23-4.2 (k) has been deemed too general to give rise to Labor Law § 241 (6) liability (see Vicki v City of Niagara Falls, 215 AD3d 1285, 1289 [4th Dept 2023]; Malvestuto v Town of Lancaster, 201 AD3d 1339, 1341 [4th Dept 2022]), and the facts clearly do not support liability under 12 NYCRR 23-9.5 (a) or (b) because the excavator was on level ground and plaintiff was not the "operator" of the excavator.

Footnote 4: For his part, Coniglio offered opinions that were limited to the liability of defendant Spinella Excavating (see NYSCEF Doc. No. 128). O'Donel, in his report (see NYSCEF Doc. No. 140), said the Village was "responsible for project worksite safety" and "failed to provide a safe work site," but never opined or otherwise stated that the Village had any specific control over plaintiff's work.